**The STATE of Ohio, Appellee,**

v.

**BRUMBACK, Appellant.**

[Cite as *State v. Brumback* (1996), 109 Ohio App.3d 65.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 94CA005868.

Decided Jan. 31, 1996.

68

*Gregory A. White,* Lorain County Prosecuting Attorney, and *Jonathan E. Rosenbaum,* Assistant Prosecuting Attorney, for appellee.

*Jonathan N. Garver,* for appellant.

Slaby, Judge.

Appellant, Joan Brumback, appeals from her convictions in the Lorain County Court of Common Pleas on charges of theft in office and tampering with records. We affirm.

The state's charge of theft in office was based upon allegations that, while acting as treasurer for the Lorain City School District, Brumback reimbursed herself for mileage that she had not driven and awarded herself salary increases that were unauthorized by the Lorain City School Board of Education. The charge of tampering with records was based upon the submission of documentation to facilitate the theft. Brumback's defense was that she had driven the miles for which she had been reimbursed and that she had believed that all salary increases had been proper and authorized by the board. Character witness testimony at trial demonstrated that Brumback had an excellent reputation in the community for honesty and integrity. A number of witnesses also testified to their personal opinion of Brumback's honesty.

The trial lasted six days. The jury returned with a verdict of guilty on both charges. Brumback was sentenced to a six-month term of imprisonment on the charge of tampering with records and to a concurrent term of one year on the charge of theft in office. The trial court also ordered restitution in the amount of $51,081.07.

Brumback assigns ten errors on this appeal from her convictions.

## Assignment of Error I

"The trial court committed reversible error in denying [Brumback]'s motion for mistrial based upon the refusal of one juror to join in the verdict."

Brumback argues that the court erred by accepting the verdicts and denying a motion for mistrial because one of the jurors, Ms. Dummitt, originally said that the guilty verdicts were not her own. R.C. 2945.77 and Crim.R. 31(D) provide for the polling of the jury after the verdict to ascertain whether there is a unanimous verdict. R.C. 2945.77 requires the jury to deliberate further if a juror declares that the verdict is not his own; Crim.R. 31(D) allows the court to either direct further deliberations or to discharge the jury, if "there is not unanimous concurrence" in the verdict. Both the statute and the rule preclude acceptance of the verdict only if the jury members are not in agreement on the determination of guilt.

If there is doubt whether a juror has agreed to the verdict, the court may interrogate the juror to clarify his answer. *State v. Brown* (1953), 110 Ohio App. 57, 61, 12 O.O.2d 227, 229, 168 N.E.2d 419, 422. If interrogation, without

coercion or undue pressure, results in rehabilitation of the juror's verdict, the trial court may accept the verdict as the jury's true ascertainment of the defendant's guilt. *Emmert v. State* (1933), 127 Ohio St. 235, 237–238, 187 N.E. 862, 863. The court is also justified in requiring the jurors to deliberate further, or, if the juror's " 'reluctance to assent is so strong that it is extremely unlikely that he will ever voluntarily agree,' " it may discharge the jury and declare a mistrial. See *State v. Worthy* (Oct. 25, 1984), Franklin App. No. 84AP–390, unreported, 1984 WL 5956, quoting Annotation (1969), 25 A.L.R.3d 1149, 1151–1152; Crim.R. 31(D).

 Our standard of review is abuse of discretion. See *State v. Green* (1990), 67 Ohio App.3d 72, 77, 585 N.E.2d 990, 992; *Worthy*, 1984 WL 5956. We will not disturb the court's ruling unless the court has exhibited an "unreasonable, arbitrary, or unconscionable" attitude. *State v. Lowe* (1994), 69 Ohio St.3d 527, 532, 634 N.E.2d 616, 620; *State v. McClain* (Mar. 30, 1994), Vinton App. No. 482, unreported, 1994 WL 111325. We find in this case that the trial court did not abuse its discretion.

The following exchange took place upon polling Juror Dummitt:

"THE COURT: * * * Ms. Dummitt, is that your true verdict as to both counts?

"MS. DUMMITT: No.

" * * *

"THE COURT: But you are indicating this is not your verdict?

"MS. DUMMITT: Well, it is, but it isn't. It's almost a situation where you can't decide.

"THE COURT: Well, let me ask you this, ma'am: In your opinion, did the State prove beyond a reasonable doubt all of the essential elements of both of these offenses?

"MS. DUMMITT: Maybe on paper."

After polling the remaining jurors, who all indicated their agreement with the verdicts, Dummitt then stated that the verdicts were her true verdicts. The judge then dismissed the jury to the jury room while he discussed the situation with counsel.

Upon the jury's return, the judge again questioned Dummitt:

"THE COURT: * * * Ms. Dummitt, this trial has been a stress and strain on everybody, but I need to ask you, ma'am, first, do you know that this jury verdict must be unanimous; all 12 of you must agree?

"MS. DUMMITT: Right.

"THE COURT: Secondly, do you feel that you understand my instructions of law of each and every element as they were defined by the Court? Each crime must be proved beyond a reasonable doubt before a verdict of guilt—before either of them can be returned; do you understand the law, ma'am?

"MS. DUMMITT: Yes.

"THE COURT: You gave me some responses before that were a little inconsistent, and I am going to let the record reflect that you are emotionally upset; do you feel like talking to me about your decision?

"MS. DUMMITT: No, not really.

" * * *

"THE COURT: * * * [W]ith regard to Count One, Tampering with Records; and I ask you if this is your true verdict?

"MS. DUMMITT: Yes.

"THE COURT: And with regard to Count Two, Theft in Office; is that your true verdict?

"MS. DUMMITT: Yes.

"THE COURT: Now, [if there is] any question in your mind that the State has not proven [the charges] beyond a reasonable doubt, I would allow you the opportunity to deliberate further with the fellow jurors.

"Would you like to take that opportunity?

"MS. DUMMITT: No."

The trial court properly interrogated Dummitt to clarify her inconsistent statements and gave her an opportunity to deliberate further or to explain her answers. She refused those opportunities; instead, she affirmed her assent to the guilty verdicts on both counts in response to clear, precise questions from the court. We cannot find, under these circumstances, that the trial court abused its discretion in accepting the verdicts and denying Brumback's motion for mistrial.

Brumback's first assignment of error is overruled.

## Assignment of Error II

"The trial court committed reversible error by refusing to instruct the jury on the defense of mistake of fact."

 " '[I]f requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge.' " *State v. McCarthy* (1992), 65 Ohio St.3d 589, 593, 605 N.E.2d 911, 913, quoting *Cincinnati v. Epperson* (1969), 20 Ohio St.2d 59, 49 O.O.2d 342, 253 N.E.2d 785, paragraph one of the syllabus. Conversely, if the general instruc-

tions fully and fairly cover the substance of the special instruction, a trial court properly refuses to give the requested special instruction. See *State v. Barnd* (1993), 85 Ohio App.3d 254, 259, 619 N.E.2d 518, 520, citing *Rice v. Cleveland* (1944), 144 Ohio St. 299, 304, 29 O.O. 447, 449, 58 N.E.2d 768, 771. An instruction is also properly refused if it does not apply to the facts governing the case. *State v. Scott* (1986), 26 Ohio St.3d 92, 101, 26 OBR 79, 87, 497 N.E.2d 55, 63.

■ Brumback relies upon *State v. Snowden* (1982), 7 Ohio App.3d 358, 7 OBR 458, 455 N.E.2d 1058, for the proposition that it is error for a trial court to refuse to instruct on mistake of fact, if timely requested, in a theft case. The court in *Snowden* stated:

"Mistake of fact is widely recognized as a defense to specific intent crimes such as theft since, when the defendant has an honest purpose, such a purpose provides an excuse for an act that would otherwise be deemed criminal. * * * When defendant, due to a mistake of fact, does not have the specific *mens rea* required by the statute, the maxim *ignorantia facti excusat* applies." *Id.* at 363, 7 OBR at 462, 455 N.E.2d at 1065.

While ignorance of the facts may excuse an otherwise illegal act, it is "an ancient maxim that all are conclusively presumed to know the law." *State v. Pinkney* (1988), 36 Ohio St.3d 190, 198, 522 N.E.2d 555, 561. In *Pinkney,* the Supreme Court of Ohio distinguished *Snowden* on the basis that mistake of law is not a recognized defense in Ohio. *Id.*

■ Brumback claims that the court erred in not giving her requested instructions on mistake of fact because, as did the defendant in *Snowden,* she defended on the grounds of honest purpose. Brumback's proposed instruction stated:

"A. Unless the Defendant had the required purpose to defraud or to facilitate a fraud, she cannot be guilty of the crime of tampering with records.

"B. Similarly, unless the Defendant had the required purpose to unlawfully deprive the owner of property or services, she cannot be guilty of theft in office.

"C. In determining whether the Defendant had the required purpose you will consider whether she acted under a mistake of fact regarding the validity of her 1987 contract, her right to a salary increase under the Board resolutions adopted on June 22, 1987, April 24, 1989, December 11, 1989, and December 2, 1991, and the propriety of using the General Administration Travel Account for payment by her mileage claims.

"D. If the Defendant had an honest belief arrived at in good faith in the existence of such facts and acted in accordance with the facts as she believed

them to be, she is not guilty of tampering with records and theft in office as purpose is an essential element of those offenses.

"E. The Defendant need not prove mistake of fact. If the evidence related to this issue creates a reasonable doubt in your minds, then your verdict must be not guilty."

██ These instructions state a defense of mistake of law. Brumback did not deny knowledge of the resolutions or of any other fact relevant to her receipt of moneys from the school board. Instead, her lack of knowledge, as reflected in the proposed instruction, went to the legal effect of the known facts: "the validity" of her contract, her "right" to salary increase, and the "propriety" of her mileage payments. The proposed instruction, therefore, did not reflect Ohio law. Furthermore, the instruction was incorrect in that theft in office does not require purpose to "unlawfully" deprive an owner of property. The statute requires only purpose to deprive the owner of property. See R.C. 2913.02(A). Finally, the state did not proceed on the basis that the mileage was paid out of the wrong account. In this respect, the charge did not reflect the evidence.

Not only was the proposed instruction incorrect, a correct statement of the *mens rea* requirement was reflected in the general charge. Utilizing the applicable statutory definitions, the trial court charged on and defined the elements of "knowledge" and "purpose." The definitions given by the court encompassed the substance of the special instruction, particularly the state's burden to prove these elements. The trial court did not err in refusing to give Brumback's proposed jury instructions.

Brumback's second assignment of error is overruled.

## Assignment of Error III

"The trial court committed reversible error by permitting the prosecutor to elicit testimony concerning (i) the intent of the Board of Education when it adopted certain resolutions and (ii) the interpretation of those resolutions."

██ Brumback argues that the court erred in allowing three witnesses to interpret board resolutions upon which Brumback allegedly relied as authority for certain salary increases. The first resolution stated:

"It is recommended that employees, who are not represented by a bargaining agent or bargaining agreement, receive the same percentage base wage increase as the certificated staff base wage increase, effective January 1990."

The staff received a 10.19 percent increase. The second resolution authorized a salary increase for "Business and Finance Office Supervisors reflecting the increase awarded to all non-represented groups." Per an attached schedule, the

highest authorized salary was less than Brumback was making at the time. Brumback took corresponding increases in her salary.

The prosecutor asked Mary Schultz, who had replaced Brumback as treasurer, Chris Costin, the independent public auditor, and Thomas Bollin, superintendent of the schools, whether one or the other of the resolutions applied to Brumback. Brumback argues that testimony concerning the intent of the board when it passed the resolutions was inadmissible because lay testimony cannot be given on questions of law. She further argues that none of the witnesses were present when the resolutions were passed, and, therefore, the witnesses did not have personal knowledge upon which they could base their testimony.

Given its superior vantage, the trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse of discretion that materially prejudiced the objecting party. *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 597, 611 N.E.2d 955, 959, citing *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130. Opinion testimony from lay witnesses is governed by Evid.R. 701:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to * * * the determination of a fact in issue." See, also, *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 625, 605 N.E.2d 936, 940; *Akron–Canton Waste Oil, supra,* 81 Ohio App.3d at 597, 611 N.E.2d at 959.

Previous testimony had established that Brumback was a contract employee. Pursuant to law, her salary was controlled by the terms of a contract to be negotiated with, and authorized by, the board. Her salary could not be altered other than as authorized by the contract or by board action through a duly passed resolution. The questions asked of Schultz and Bollin were whether the groups of employees referred to in the resolutions included Brumback. Both answered that, as a contract employee, Brumback would not be entitled to the raises authorized by the resolutions.

The testimony was permissible under Evid.R. 701. Both Bollin and Schultz were familiar with the board's resolutions by virtue of their job duties as administrators for the school board. Both were also paid through individually negotiated contracts. Their familiarity with the operations of the board, the school system and the payment of salaries to different groups of employees, including "contract" employees such as themselves, rendered them particularly qualified to state an opinion on whether the resolutions could be construed to apply to Brumback. The testimony was helpful, if not necessary, to the determi-

nation of a fact before the jury—whether Brumback could have believed that the resolutions applied to her.

Costin, whose company audited the 1991 school records, testified that part of the duties of an auditor was to determine the board's compliance with the Ohio Revised Code in the disbursement of funds. In any audit, he was required to review school documents that substantiate and authorize the outlay of funds. His job made him knowledgeable of the Revised Code and school documents. Also, his testimony was not "legal opinion"; he testified on cross-examination only that it was "not logical" that the second resolution be interpreted to authorize a raise for a person already earning more than the highest amount included in the resolution's attached schedule. The cross-examination was in response to extensive direct examination by Brumback's counsel in regard to Costin's reliance on the board's attorneys for legal advice. Under these circumstances, we do not find that the court abused its discretion in allowing the testimony.

Brumback's third assignment of error is overruled.

### Assignment of Error IV

"The trial court deprived [Brumback] of due process of law and committed reversible error by permitting the prosecutor to ask character witnesses to give an opinion of [Brumback]'s character upon the assumption of [Brumback]'s guilt for the charges alleged in the indictment."

During cross-examination of two state witnesses and on direct examination of a defense witness, defense counsel elicited testimony that Brumback had a reputation for honesty and integrity in the community, and that the witness being questioned personally believed her to be honest. The state countered with a series of hypothetical questions that required the witness to answer whether his or her opinion of Brumback's honesty and integrity would be altered by the knowledge that she had committed the acts of misconduct for which she was being tried. For the sake of clarity, we refer to the prosecutor's line of questioning as if given on cross-examination. Brumback, citing a number of federal circuit court decisions, asserts that the cross-examination of her character witnesses with guilt-assuming hypothetical questions was prejudicially erroneous. The state argues that the "modern trend" distinguishes between reputation and opinion evidence and holds that guilt-assuming hypothetical questions are improper to impeach reputation testimony, but not improper to impeach personal opinion testimony. See *United States v. White* (C.A.D.C.1989), 887 F.2d 267, 274–275.

The federal courts have universally held that this line of cross-examination is improper in response to reputation testimony. See, *e.g.*, *United States v. Candelaria–Gonzalez* (C.A.5, 1977), 547 F.2d 291, 294; *United States v. Siers*

(C.A.4, 1989), 873 F.2d 747, 749; *United States v. Barta* (C.A.8, 1989), 888 F.2d 1220, 1224–1225; *United States v. Polsinelli* (C.A.10, 1981), 649 F.2d 793, 798; *White,* 887 F.2d at 274. It is accepted that the community's perception of the defendant's character cannot be tested by inquiry into one person's opinion of the speculative impact of a guilty verdict on that reputation. "Calling for a prediction of what the community might think of the accused *if* he were convicted sometime in the future is void of any trustworthiness whatever." (Emphasis *sic.*) *Candelaria–Gonzalez,* 547 F.2d at 294, fn. 5. In contrast, there is some relevance in questions that test the foundation of one's personal opinion. In *Polsinelli,* 649 F.2d at 796, the Tenth Circuit noted the distinction, but declined to determine whether the distinction was of any significance because no personal opinion testimony had been given in that case. *Id.,* 649 F.2d at 799.

The federal circuit courts, with the exception of the District of Columbia, have disavowed the distinction and have held that this type of questioning is highly improper to impeach either type of character testimony. See, *e.g., United States v. Oshatz* (C.A.2, 1990), 912 F.2d 534, 539, explaining *United States v. Morgan* (C.A.2, 1977), 554 F.2d 31; *United States v. Williams* (C.A.7, 1984), 738 F.2d 172, 177; *United States v. Mason* (C.A.4, 1993), 993 F.2d 406, 409; see, also, *United States v. McGuire* (C.A.6, 1984), 744 F.2d 1197, 1204 (dicta); *White,* 887 F.2d at 274–275 (applying distinction). The courts are concerned not only with adherence to the rules of evidence, but also with the avoidance of the risk of prejudice to a defendant's right to the presumption of innocence. See, *e.g., Candelaria–Gonzalez,* 547 F.2d at 294; *Barta,* 888 F.2d at 1224–1225; *Polsinelli,* 649 F.2d at 796.

We agree with the majority view of the federal courts that, regardless of whether the witness has testified to the defendant's reputation in the community or to his or her own personal opinion, it is error to permit a character witness in a criminal trial to be cross-examined with questions that require an assumption of the defendant's guilt. The trial court abused its discretion by allowing the state to cross-examine the character witnesses in that manner. We next decide whether the error was prejudicial to her.

 Pursuant to Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." A reviewing court must determine whether there is any reasonable possibility that the violation may have contributed to the defendant's conviction. If, after undertaking this review, the court can "declare a belief that the error was harmless beyond a reasonable doubt," reversible error does not exist. *State v. Rahman* (1986), 23 Ohio St.3d 146, 150, 23 OBR 315, 318, 492 N.E.2d 401, 406; *State v. DeMarco* (1987), 31 Ohio St.3d 191, 195, 31 OBR 390, 393, 509 N.E.2d 1256, 1260.

We conclude that the error was harmless. The overwhelming evidence of Brumback's knowledge of Ohio law and of the board's policy and procedure negated Brumback's defense of lack of intent. We also note that counsel for Brumback rehabilitated the witnesses well. The jury was free to weigh the testimony of the character witnesses, taking into account all three witnesses' expression of disbelief that Brumback would commit the crime, and reach its own conclusions based upon all the evidence. We find, beyond a reasonable doubt, that the error did not contribute to the finding of guilt on either count.

We overrule Brumback's fourth assignment of error.

### Assignment of Error V

"The trial court deprived [Brumback] of due process of law and committed reversible error by allowing the state to amend its bill of particulars and by denying [Brumback]'s motions for acquittal."

Brumback claims that the trial court prejudiced her defense by allowing the state to amend its bill of particulars at trial to assert new theories in support of the tampering charges. Apparently she is arguing that, because the amendment should not have been permitted and the evidence was insufficient to prove the theory of tampering that was suggested in the bill of particulars, the motions for acquittal should have been granted.

The indictment, using the statutory language of R.C. 2913.42(A)(1), charged Brumback with falsifying records, "to wit: pay records [and] mileage records." Upon request, the state filed a bill of particulars, which stated with regard to Count I:

"[Brumback] submitted invoices for unsubstantiated mileage records for in-city travel with the City of Lorain. Each of these invoices were submitted and the amounts were logged into and paid from the Director and Administrator's Account, rather than from the Treasurer's account, in order that the records on file with the Board of Education would not reflect that the large amount of mileage checks were being issued to Joan Brumback. Attached is [an outline of] the amounts that were claimed by her on unsubstantiated invoices * * *."

The bill of particulars did not refer to the falsification of "pay records," which was alleged in the indictment.

Crim.R. 7(E) states:

"[Upon timely request or court order], the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charged and of the conduct of the defendant alleged to constitute the

offense. A bill of particulars may be amended at any time subject to such conditions as justice requires."

The purpose of a bill of particulars is "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v. Sellards* (1985), 17 Ohio St.3d 169, 171, 17 OBR 410, 411, 478 N.E.2d 781, 784. It also acts to "inform an accused of the exact nature of the charges against him so that he can prepare his defense thereto." *State v. Fowler* (1963), 174 Ohio St. 362, 364, 22 O.O.2d 416, 417, 189 N.E.2d 133, 134. Consistent with this purpose, Crim.R. 7(D) allows amendment of a bill of particulars "before, during, or after a trial," provided that "no change is made in the name or identity of the crime charged." See, also, *State v. Brown* (1994), 99 Ohio App.3d 604, 610, 651 N.E.2d 470, 474.

 Thus, the rule authorizes amendment in the court's limited discretion. Again, abuse of discretion is the foundation for error. See *State v. Mundy* (1994), 99 Ohio App.3d 275, 313, 650 N.E.2d 502, 526. Additionally, for the amendment to constitute reversible error, the defendant must demonstrate that the amendment hampered her defense or otherwise prejudiced her. *Id.* Brumback argues that the court erroneously allowed the state to pursue three new theories of tampering: (1) that Brumback did not drive the miles claimed, (2) that the mileage was "unsubstantiated," and (3) that she falsified "pay records." She further claims that the assertion of these theories prejudiced her because she was prepared only to defend against the allegation that she improperly paid herself for mileage from the wrong account.

The first two theories are essentially one and the same and are consistent with the original bill of particulars as well as the indictment. Brumback ignores the language in the bill relating to invoices for "unsubstantiated mileage"; she concentrates on the language regarding the accounts. The substance of the allegation, however, was the submission of invoices that did not substantiate her mileage. An invoice is false if it represents something that did not happen. Evidence that Brumback did not drive the miles for which she sought reimbursement or that someone else drove the miles was consistent with the bill of particulars and did not alter the nature of the tampering charge in the indictment. The trial court did not abuse its discretion by allowing the amendment.

With regard to the third tampering theory, Brumback states that she "was led to believe that the reference to 'pay records' in the Indictment was either surplusage or a reference to records which related to the payment of Brumback's mileage claims." Brumback's ignorance was self-induced. Falsification of pay records was specifically included in the indictment as a basis for the tampering charge. Brumback was entitled to have the bill of particulars amended, when received, if she felt that the bill was insufficient to clarify the indictment. The failure of a defendant to request amendment of the bill precludes her from

establishing prejudice. *State v. Ensman* (1991), 77 Ohio App.3d 701, 704–705, 603 N.E.2d 303, 304–305, quoting *State v. DeRighter* (1945), 145 Ohio St. 552, 555, 31 O.O. 194, 195, 62 N.E.2d 332, 334. In any event, falsification of pay records was consistent with the crime as charged, and review of the record shows that Brumback was well prepared to defend against the allegations.

Brumback's fifth assignment of error is overruled.

### Assignment of Error VI

"[Brumback]'s convictions should be reversed because of prosecutorial misconduct."

The Ohio Supreme Court has declared that prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 402, 473 N.E.2d 768, 793. Brumback claims that she was denied a fair trial by the prosecutor's insinuation, during cross-examination of Brumback and closing argument, that "defense counsel and [Brumback] had conspired to submit false evidence." In both instances, the court sustained counsel's objections, and in closing argument, the court instructed the jury to disregard the statement. Brumback was not prejudiced by the conduct.

Brumback also claims prosecutorial misconduct in the state's submission of "false or misleading evidence." The state had photocopied two documents onto one paper, which Brumback claims was an attempt to create the false impression that the documents were related. When Schultz, as custodian of the board's records, identified the exhibit, she explained that additional information had been copied onto some of Brumback's mileage reimbursement forms to reflect that the information was found attached to those forms. In light of the explanation, there was no deception in the submission of the exhibit as presented.

The alleged prosecutorial misconduct did not deny Brumback a fair trial. Brumback's sixth assignment of error is overruled.

### Assignment of Error VII

"The trial court abused its discretion and deprived [Brumback] of due process of law by refusing to conduct a hearing on the issue of restitution."

R.C. 2929.11(E) permits a court to order a convicted felon to make restitution for "all or part of the value of the property that is the subject of any theft offense * * * that the person committed." See, also, R.C. 2921.41(C)(2)(a). Restitution is limited to the actual loss caused by the defendant's illegal conduct for which he was convicted. *State v. Friend* (1990), 68 Ohio App.3d 241, 243, 587 N.E.2d 975, 976; see, also, *State v. Warner* (1990), 55 Ohio St.3d 31, 69, 564

N.E.2d 18, 52; *State v. Irvin* (1987), 39 Ohio App.3d 12, 14, 528 N.E.2d 1277, 1278. There must be sufficient evidence in the record from which the court can ascertain the amount of restitution to a reasonable degree of certainty. See *Warner*, 55 Ohio St.3d at 69, 564 N.E.2d at 52.

If the evidence in the record is insufficient, courts have held that an evidentiary hearing may be necessary to satisfy due process. See, *e.g., State v. Wohlgemuth* (1990), 66 Ohio App.3d 195, 200, 583 N.E.2d 1076, 1079; *State v. Poole* (Apr. 14, 1994), Adams App. No. 563, unreported, 1994 WL 146829; *State v. Eberling* (Apr. 9, 1992), Cuyahoga App. Nos. 58559 and 58560, unreported, 1992 WL 74227. A hearing is not necessary, however, if there is evidence in the record to substantiate the loss. *State v. Carrino* (May 11, 1995), Cuyahoga App. No. 67696, unreported, 1995 WL 277103, citing *State v. Montes* (1993), 92 Ohio App.3d 539, 636 N.E.2d 378. A court may also consider a presentence investigation report when ordering restitution. *State v. Deal* (Sept. 27, 1990), Cuyahoga App. No. 57458, unreported, 1990 WL 139816.

Brumback points out that the state predicated its charge of theft in office upon a number of different theories, including unauthorized salary increases and wrongful mileage reimbursement. She argues that the court erroneously adopted the probation department's assessment of the total amount of loss without holding a hearing to determine whether the board actually had suffered the loss. We review Brumback's contention under an abuse of discretion standard. See *Miller v. Miller* (1991), 73 Ohio App.3d 721, 724, 598 N.E.2d 167, 169.

The trial court relied upon the probation department's assessment of the loss in Brumback's presentence investigation report in its determination of the amount of restitution to be ordered. This was proper. In addition, a plenitude of testimony and evidence substantiated the loss. In light of the presentence investigation report and the evidence at trial, we do not find that it was unreasonable, arbitrary or capricious for the court to refuse to hear yet more evidence on the proper amount of restitution.

## Assignment of Error VIII

"The verdicts are against the manifest weight of the evidence."

"In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010.

This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. *Id.*

The state prosecuted its case primarily upon two separate courses of conduct: reimbursement for mileage not driven and receipt of unauthorized salary payments. Brumback argues that the evidence of intent was not sufficient to support a conviction. She points out the absence of any evidence of concealment and that she had explanations for each salary increase. Brumback also argues that the evidence adduced at trial confirmed her extensive use of her car for school purposes, which justified her mileage claims.

■ We find that the manifest weight of the evidence supported the convictions. With regard to the mileage claims, the evidence showed that, for years, Brumback had submitted unitemized mileage reimbursement vouchers in excess of the quarterly maximum amount payable for in-city mileage. Board policy required that mileage reimbursement claims be itemized. As treasurer, Brumback was responsible for approving mileage payments upon proper documentation. By virtue of her office, she was able to reimburse herself despite the lack of proper documentation pursuant to the board's policy. There was also testimony that Brumback was not out of the office enough to justify the mileage claimed by her. Although Brumback disputed this last fact, the issue was for the jury. We can find no manifest miscarriage of justice in a determination that Brumback was guilty of the charges based upon the evidence.

■ Similarly, the weight of the evidence supported the guilty verdict for Brumback's uncontested receipt of salary payments in excess of those authorized by the board. The trial court instructed on theft by deception.[1] See R.C. 2913.02(A)(3). Although there was little evidence that Brumback attempted to hide her receipts, concealment is not the only means of deception through which theft by deception may be perpetrated. As defined in R.C. 2913.01(A) and as instructed by the court, "deception" may also occur through "any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." Rather than require compliance with Ohio law in the matter of her contract, or seek board approval of adjustments to her salary, Brumback proceeded to take raises based upon resolutions that applied to others

---

1. The theft statute does not require deception where the theft consists of the unconsented to, unauthorized taking of property. R.C. 2913.02(A)(1). Whether Brumback actively concealed or misrepresented her earnings or reimbursement would be irrelevant under that subsection.

and upon a contract that contained terms not assented to by the board in official action. Her conduct could well be deemed deceptive.

Second, Brumback's testimony that she did not intend to take anything to which she was not entitled does not necessitate a not guilty verdict. There was strong evidence from which the jury could find that Brumback had the requisite intent. As treasurer, Brumback was responsible for attending all board meetings and for creating and maintaining the board's resolutions. Her knowledge of the law, board action, policy and procedure provided ample evidence that she knew that what she was doing was contrary to law. The documentary and testimonial evidence combined justified a jury verdict on the grounds that Brumback took property from the board, knowingly and purposefully, without the authorization of the board, and by deception.

Brumback's eighth assignment of error is overruled.

## Assignment of Error IX

"The trial court committed reversible error in denying [Brumback]'s motion for new trial based upon newly discovered evidence."

"To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro* (1947), 148 Ohio St. 505, 36 O.O. 165, 76 N.E.2d 370, syllabus; *State v. Hutchison* (Dec. 14, 1988), Summit App. No. 13626, unreported, at 7, 1988 WL 134289.

The trial court's decision on a motion for new trial will not be disturbed absent an abuse of discretion. *State v. Williams* (1975), 43 Ohio St.2d 88, 72 O.O.2d 49, 330 N.E.2d 891, paragraph two of the syllabus.

Brumback moved for a new trial based upon the discovery of evidence that impeached the credibility of Schultz, the treasurer who testified extensively to the documentary evidence against Brumback. The evidence was a newspaper article that quoted Superintendent Bollin as saying, "The work [Schultz] has done is simply incompetent." Citing *Dayton v. Martin* (1987), 43 Ohio App.3d 87, 539 N.E.2d 646, and *State v. Abi–Sarkis* (1988), 41 Ohio App.3d 333, 535 N.E.2d 745, Brumback argues that, because Schultz was a key witness, evidence of her incompetency would have resulted in a different verdict.

Both *Martin* and *Abi–Sarkis* stand for the proposition that newly discovered evidence impeaching key testimony may alone be sufficient to grant a

new trial if introduction of the evidence at trial probably would have changed the result. *Martin,* 43 Ohio App.3d at 90, 539 N.E.2d at 648; *Abi–Sarkis,* 41 Ohio App.3d at 342–343, 535 N.E.2d at 754–755. In the instant case, however, Schultz's testimony primarily concerned her compilation of the data from the school records. Evidence that the superintendent thought her to be incompetent does not impeach the documents upon which the calculations were based. Those documents were also in evidence. Additionally, other testimony verified the accuracy of her figures. The evidence would have merely impeached Schultz's credibility, but probably would not have altered the result; the trial court did not err in denying the motion for new trial.

Brumback's ninth assignment of error is overruled.

### Assignment of Error X

"The trial court committed reversible error in refusing to grant [Brumback]'s unopposed motion to supplement the record on appeal."

Brumback moved to supplement the record with an affidavit that corrected a statement made in the presentence investigation report. The report stated that Brumback admitted that she was not entitled to the salary increases. The statement did not affect any of the issues raised by Brumback under her assignments of error. In addition, the court was aware of the alleged incorrect statement. Because the statement was inconsequential, we are precluded from finding reversible error. See App.R. 12(B) and (D); Crim.R. 52(A).

Brumback's tenth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and REECE, J., concur.