The STATE of Ohio, Appellee,

v.

STREETER, Appellant.

[Cite as *State v. Streeter,* 162 Ohio App.3d 748, 2005-Ohio-4000.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–03–088.

Decided Aug. 5, 2005.

750

Raymond C. Fischer, Wood County Prosecuting Attorney, and Gwen Howe–Gebers, Assistant Prosecuting Attorney, for appellee.

Ann M. Baronas, for appellant.

PIETRYKOWSKI, Judge.

{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Wood County Court of Common Pleas after a jury found defendant-appellant, Jesse Streeter, guilty of aggravated burglary, a felony of the first degree. Appellant challenges that judgment through the following assignments of error:

{¶ 2} "Assignment of Error Number One:

{¶ 3} "The trial court erred in denying appellant's motion to suppress.

{¶ 4} "Assignment of Error Number Two:

{¶ 5} "The verdict was unsupported by and against the manifest weight of the evidence.

{¶ 6} "Assignment of Error Number Three:

{¶ 7} "The sentence imposed by the trial court was excessive and contrary to law."

{¶ 8} On July 16, 2003, appellant was indicted and charged with one count of aggravated burglary in violation of R.C. 2911.11(A)(1). The indictment was filed as a result of the following events that were testified to at the trial below.

{¶ 9} At approximately 4:00 a.m. on July 9, 2003, four African–American men wearing masks and gloves entered the home of John and Terry Delgado in Perrysburg, Ohio. They initially shouted that they were the police but then began demanding money from the Delgados and demanded to know the location of a safe. The Delgados had no safe and very little money. The men then covered the Delgados with a sheet and beat them severely. Mrs. Delgado heard one of the assailants state that the sheet was used "so the blood wouldn't splatter." The men took jewelry (including Mrs. Delgado's wedding rings), a wallet, and a purse. During the assault, the mask slipped off the face of one of the assailants, and Mrs. Delgado saw his face. At that point, another of the assailants said, "We're going to have to kill her. She seen too much." The assailants continued to yell at the Delgados, ransacked their home, beat them, and threatened to rape Mrs. Delgado. At one point, however, the pager of one of the assailants went off, and three of the men left the home. The Delgados initially believed that all four of the men had left and began to get up. At that point, however, the remaining assailant placed a gun to Mrs. Delgado's head and said, "I'm still here, bitch." He then also left the residence.

{¶ 10} When the Delgados were certain that the assailants had left, they fled their home in their car. They immediately saw a police cruiser parked at a nearby corner and drove directly to him. Officer Matt Weaver, a Perrysburg Township police officer, had responded to a 911 call from Carlos Oveido, a neighbor of the Delgados. Oveido had been out walking when he saw a champagne-colored Cadillac pull up in front of the Delgados' home. Oveido reported that four black men, who all appeared to be armed, walked up to the Delgados' home, kicked in the door, and yelled "police." Oveido told Officer Weaver that the four men had just gotten back into the Cadillac and driven west on Fort Meigs Boulevard. Sergeant Jack Otte of the Perrysburg City Police Department was on patrol on Route 25 in Perrysburg when he heard the township police put out a call regarding the assault in Perrysburg Heights. He then saw two cars leaving the Perrysburg Heights area and decided to follow them. One of the cars was a champagne-colored Cadillac. After hearing a description of the assailant's car, Sergeant Otte began to follow the Cadillac,

which pulled onto I–475 and then headed north onto I–75. Sergeant Otte activated his overhead lights and continued to follow the Cadillac. The vehicle then slowed, and two persons jumped out on the right side of the car, jumped over the guardrail, and fled the highway area, running into a commercial area off the highway that included a Cracker Barrel restaurant. The Cadillac continued north on I–75, where Sergeant Otte eventually stopped the vehicle and apprehended the driver, Gerald Riley. Upon searching the Cadillac, Sergeant Otte found a pillowcase that contained Mr. Delgado's wallet and other items from the Delgados' home. The car also contained a cell phone, rubber gloves, and a mask. That cell phone was later determined to belong to Riley.

{¶ 11} Meanwhile, approximately seven other officers searched the area off the highway, into which the other suspects had fled. Officer Greg Cole, a Perrysburg city police officer, discovered appellant in a Dumpster behind the Cracker Barrel restaurant. When Officer Cole opened the Dumpster, appellant was on his cell phone and said, without any questioning from Cole, that he was out jogging after having a fight with his girlfriend and that he "didn't have anything to do with it." Officer Cole testified at the trial that it was raining that morning and that appellant was not wearing any type of reflective gear. Officer Cole and Officer Doug Kinder then arrested appellant and took his cell phone.

{¶ 12} While further searching the area behind the Cracker Barrel restaurant, officers discovered Michael Hopson approximately 25 yards from the Dumpster in which appellant was found. Additionally, later that morning, officers searching the area discovered a handgun and a pair of white latex gloves. No fingerprints were found on the gun.

{¶ 13} Appellant was transported to the Perrysburg Township Police Department, where he was booked, fingerprinted, and read his Miranda rights. Appellant gave his name as Lamont Streets. When Officer John Dvorack read appellant his Miranda rights from a standard from, appellant placed the initials "LS" next to the separate rights as they were read to him. Appellant, however, refused to sign a waiver of those rights. After appellant and the other two suspects, Gerald Riley and Michael Hopson, were placed into holding cells, Detective Roger Wallace questioned the men generally, asking whether they knew one another and whether they wanted to cooperate. Appellant replied that he did not know the other two men, that his girlfriend had kicked him out of her car, and that he had been calling a friend for a ride home.

{¶ 14} The following day, Officer Dvorack learned that appellant's real name was Jesse Lamont Streeter. In addition, after obtaining a search warrant for the cell phone seized from appellant, officers learned that the phone belonged to appellant's mother and that Gerald Riley's cell-phone number was in the phone's directory. Officers also learned that the phone number of the phone found in

appellant's possession was in Riley's cell-phone directory. From appellant's cell phone directory, officers also learned that on the morning of July 9, 2003, there had been communication between the two phones until 1:47 a.m. The last call made on the phone found in appellant's possession was placed at 4:03 a.m. to Teresa Bowman. Bowman testified at the trial below that she received a call from appellant in the early morning on July 9, 2003. Bowman stated that appellant said he had been kicked out of a car and he had asked her whether she could come pick him up. That conversation, however, lasted only for seconds because Bowman then heard the police arresting appellant.

{¶ 15} In addition to the above evidence, appellant called Julie Cox to testify in his defense. Cox works for the Ohio Bureau of Criminal Identification and Investigation conducting forensic testing on evidentiary materials. In connection with the present case, she tested five evidentiary items: a pair of rubber gloves, a pair of black gloves, a mask, and two caps. Appellant's DNA was not found on any of the items.

{¶ 16} At the conclusion of the trial, the jury returned a verdict of guilty on the charge of aggravated burglary, a first-degree felony. Appellant was subsequently sentenced to ten years in prison, the maximum term. It is from that judgment and the trial court's ruling on his motion to suppress that appellant now appeals.

{¶ 17} In his first assignment of error, appellant challenges the lower court's ruling on his motion to suppress. In that motion, appellant sought to have suppressed statements he made to law-enforcement officers while in custody and evidence obtained from the seizure of the cell phone he had in his possession. After a hearing on the motion, the lower court concluded that although appellant's statements to officers while he was in custody and in a holding cell were not immediately preceded by Miranda warnings, appellant had earlier been provided with those warnings and acknowledged his understanding of them when he initialed the Miranda form using the initials of his alias. The court then found under the totality of the circumstances that appellant had remained aware of his rights when he spoke with the officer. Those statements were therefore not subject to suppression. With regard to the cell-phone records, the court determined that the officers had probable cause to believe that appellant had committed the offense of aggravated burglary when they found him in the Dumpster and that seizure of the phone was therefore proper as an incident to that arrest. On appeal, appellant challenges both of these rulings by the trial court.

{¶ 18} When considering a motion to suppress, a trial court is in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.

*State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. An appellate court must independently determine, without deferring to a trial court's conclusions, whether, as a matter of law, the facts meet the applicable standard. *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141.

■ {¶ 19} Pursuant to the United States Supreme Court's decision in *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, a person who is taken into custody or otherwise significantly deprived of his freedom and subjected to interrogation by law-enforcement officials must be informed of certain constitutional rights "and make a knowing and intelligent waiver of those rights before statements obtained during the interrogation will be admissible" as evidence against him. *State v. Treesh* (2001), 90 Ohio St.3d 460, 470, 739 N.E.2d 749. "It is also well established, however, that a suspect who receives adequate *Miranda* warnings prior to a custodial interrogation need not be warned again before each subsequent interrogation." Id., citing *Wyrick v. Fields* (1982), 459 U.S. 42, 48–49, 103 S.Ct. 394, 74 L.Ed.2d 214, and *State v. Barnes* (1986), 25 Ohio St.3d 203, 208, 25 OBR 266, 495 N.E.2d 922. That is, "[p]olice are not required to readminister the *Miranda* warnings when a relatively short period of time has elapsed since the initial warnings." Id., citing *State v. Mack* (1995), 73 Ohio St.3d 502, 513–514, 653 N.E.2d 329. In determining whether initial warnings remain effective for subsequent interrogations, courts look to the totality of the circumstances. *State v. Roberts* (1987), 32 Ohio St.3d 225, 232, 513 N.E.2d 720.

■ {¶ 20} Appellant asserts that although he was initially advised of his Miranda rights both verbally and in writing, he never knowingly, intelligently, or voluntarily waived those rights before Detective Wallace questioned him while he was in the holding cell.

■ {¶ 21} A suspect may waive his *Miranda* rights if his waiver is knowing and voluntary. *Edwards v. Arizona* (1981), 451 U.S. 477, 483, 101 S.Ct. 1880, 68 L.Ed.2d 378. In *North Carolina v. Butler* (1979), 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286, the United States Supreme Court explained: "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but it is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. As was unequivocally said in Miranda, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights;

the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."

{¶ 22} The issue of waiver is determined by the totality of the circumstances in each case, including the defendant's background, experience, and conduct. Id., 441 U.S. at 374, 99 S.Ct. 1755, 60 L.Ed.2d 286. The state is required to prove only that appellant waived his right to remain silent by a preponderance of the evidence. *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473.

{¶ 23} Upon review of the evidence presented at the suppression hearing, we cannot say that the trial court erred in concluding that appellant knowingly and voluntarily waived his *Miranda* rights when he responded to Detective Wallace's questions after being placed in a holding cell. Appellant had placed the initials of his alias, Lamont Streets, next to each sentence of the "Statement of Miranda Rights" form. This form reads:

{¶ 24} "1. You have the right to remain silent.

{¶ 25} "2. Anything you say can and will be used against you in a court of law.

{¶ 26} "3. You have the right to talk to a lawyer and have him present with you while you are being questioned.

{¶ 27} "4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.

{¶ 28} "5. You can decide at any time to exercise these rights and not answer any questions or make any statements."

{¶ 29} Accordingly, appellant acknowledged that he had been notified of those rights and that he understood them. Although appellant refused to sign the waiver line of that form, his refusal is not dispositive of the issue, for shortly after acknowledging his understanding of his rights, he voluntarily responded to Detective Wallace's questions by stating that he did not know the other suspects and that he and his girlfriend had had a fight in her car and she had kicked him out of the car. The trial court, therefore, did not err in concluding that appellant had made a knowing and voluntary waiver of his rights when he chose to speak to Detective Wallace shortly after acknowledging his understanding of his rights.

{¶ 30} With regard to the cell-phone records, appellant asserts that because the arresting officers did not have probable cause or reasonable grounds to believe that appellant had committed a crime, their arrest of appellant was in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Therefore, appellant asserts that the seizure of his cell-phone and any information retrieved from that phone should have been suppressed as fruit of the poisonous tree.

{¶ 31} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. A warrantless arrest is permissible if "at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142; *State v. Heston* (1972), 29 Ohio St.2d 152, 155–156, 58 O.O.2d 349, 280 N.E.2d 376.

{¶ 32} In the present case, the trial court concluded that the arresting officers had probable cause to believe that appellant had committed the crime of aggravated burglary when they placed him under arrest. A witness had seen four men exit a champagne-colored Cadillac, break into the Delgados' home, leave the home, and reenter the Cadillac. A police officer then saw the Cadillac leave the area where the crime had been committed and enter the freeway. That same officer followed the Cadillac, saw it slow down along the side of the freeway, and witnessed two men jump from the vehicle and run toward a commercial area that included a Cracker Barrel restaurant. Shortly thereafter, appellant was found inside a Dumpster behind the Cracker Barrel restaurant. All of this took place shortly after 4:00 in the morning. Under the totality of the circumstances, we cannot say that the lower court erred in concluding that officers had probable cause to arrest appellant.

{¶ 33} Given that officers had probable cause to arrest appellant, we further find that the seizure of the cell phone in appellant's possession was proper as an incident to that arrest. "The right of police officers to search a suspect incident to a lawful arrest has been a long-recognized exception to the warrant requirement of the Fourth Amendment. *Weeks v. United States* (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. Pursuant to a search incident to arrest, the police may conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well." *State v. Jones* (1996), 112 Ohio App.3d 206, 215, 678 N.E.2d 285, citing *United States v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, and *Gustafson v. Florida* (1973), 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456.

{¶ 34} Accordingly, the trial court did not err in denying appellant's motion to suppress, and the first assignment of error is not well taken.

{¶ 35} In his second assignment of error, appellant asserts that there was insufficient evidence to support the verdict below and that the verdict was

against the manifest weight of the evidence. The Supreme Court of Ohio has ruled that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Under a manifest-weight standard, however, an appellate court sits as a "thirteenth juror" and may disagree with the fact-finder's resolution of the conflicting testimony. *Thompkins,* supra, 78 Ohio St.3d at 387, 678 N.E.2d 541. The appellate court, " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.' " Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Since appellant's assignment of error encompasses both sufficiency and manifest-weight issues, we must apply both standards.

{¶ 36} Appellant was convicted of violating R.C. 2911.11(A)(1). That statute reads:

{¶ 37} "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

{¶ 38} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another."

{¶ 39} Upon a review of the evidence presented in the trial below, and in light of the applicable standards, we conclude that the verdict was supported by sufficient evidence and was not against the manifest weight of the evidence. A witness saw four African–American men exit a champagne-colored Cadillac and

forcibly enter the Delgados' home. That witness, Carlos Oveido, called 911. The Delgados testified that four African–American men broke into their home, beat them, demanded money, and took a number of items from the home. The Delgados testified that all four men were armed and wore masks and gloves. In addition, Mrs. Delgado stated that she saw the face of one of the attackers when his mask fell off. She subsequently identified him as Michael Hopson. After the attackers left the Delgados' home, Oveido saw them reenter the champagne Cadillac and leave the neighborhood. Immediately thereafter, Officer Weaver appeared, responding to the 911 call. Oveido told him the direction in which the Cadillac had fled, and Weaver notified other officers of the car. At that same time, Officer Otte saw the Cadillac leaving the area and began to follow it. Officer Otte followed the vehicle as it entered the freeway and activated his overhead lights in an attempt to stop the car. The car then slowed down, and two African–American males jumped from the car. Officer Otte saw them run toward a commercial area that included a Cracker Barrel restaurant. Officer Otte continued to chase the Cadillac and soon apprehended its driver, Gerald Riley. A search of the Cadillac revealed a pillowcase that Mrs. Delgado identified as hers and other items taken from the Delgado home. Other officers searched the commercial area into which the other two suspects had fled and soon found appellant in a Dumpster behind the Cracker Barrel restaurant. They also found Michael Hopson a short distance from appellant. In addition to this evidence, cell-phone records from the phone found in appellant's possession and the phone found with Riley showed that there had been communication between the two phones only hours before the burglary. The directories from the phones also connected appellant and Riley.

{¶ 40} Given this evidence, we cannot say that the verdict was unsupported by the evidence or was against the manifest weight of the evidence, and the second assignment of error is therefore not well taken.

{¶ 41} In his third assignment of error, appellant challenges two aspects of his sentence. First, appellant contends that the maximum sentence, ten years, imposed upon him by the trial court was contrary to law. Second, appellant asserts that the trial court's order of restitution was contrary to law.

{¶ 42} An offender who receives the maximum possible prison term for only one offense has a statutory right to appeal the sentence. R.C. 2953.08(A)(1)(a). On review, an appellate court cannot reverse a felony sentence unless it finds, by clear and convincing evidence, that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2)(a) and (b).

{¶ 43} Appellant was convicted of aggravated burglary, a first-degree felony. Pursuant to R.C. 2929.14(A)(1), the range of prison terms for a first-

degree felony is three to ten years. In determining the appropriate sentence to impose, a sentencing judge must be mindful of the overriding purposes of felony sentencing: "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). Pursuant to R.C. 2929.12(A), a court imposing a sentence for a felony "has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." This discretion is guided by the factors in R.C. 2929.12(B) and (C), regarding the seriousness of the offender's conduct, R.C. 2929.12(D) and (E), regarding the likelihood of the offender's recidivism, and any other factors that the court finds relevant. In making the mandatory determinations pursuant to R.C. 2929.12, the trial court is not required to use specific language or make specific findings. *State v. Arnett* (2000), 88 Ohio St.3d 208, 215, 724 N.E.2d 793. In fact, a trial judge may satisfy his or her duty under R.C. 2929.12 with nothing more than a rote recitation that the applicable factors were considered. *Id.*

{¶ 44} In sentencing an offender to a maximum term of incarceration, a trial court must make certain findings pursuant to R.C. 2929.14(C). Specifically, "the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." *State v. Edmonson* (1999), 86 Ohio St.3d 324, 329, 715 N.E.2d 131. Those criteria are (1) that the offender committed the worst form of the offense, (2) that the offender poses the greatest likelihood of committing future crimes, (3) that the offender is a major drug offender, and (4) that the offender is a repeat violent offender. R.C. 2929.14(C).

{¶ 45} In addition, pursuant to R.C. 2929.19(B)(2)(d), if the sentencing court imposes a maximum prison term for a single offense under R.C. 2929.14(C), it must set forth its reasons for doing so. See *State v. Moore* (2001), 142 Ohio App.3d 593, 597, 756 N.E.2d 686, citing *Edmonson*, supra, 86 Ohio St.3d at 328, 715 N.E.2d 131. Those reasons must be stated at the sentencing hearing. See *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph two of the syllabus; *State v. Newman*, 100 Ohio St.3d 24, 2003-Ohio-4754, 795 N.E.2d 663.

{¶ 46} Upon a review of the transcript from the sentencing hearing below, we conclude that the trial court made the required findings for imposing the maximum sentence of ten years for a first-degree felony. The court expressly determined that appellant committed the worst form of the offense of aggravated burglary and that based upon his criminal record, he posed the greatest likelihood of committing future crimes. Appellant asserts that the trial court failed to consider any factors that would have indicated that appellant's

conduct was less serious than conduct normally constituting the offense of aggravated burglary under R.C. 2929.12(C) or factors that would have indicated that appellant was not likely to commit future crimes under R.C. 2929.12(E). The court clearly stated at the sentencing hearing that it was considering the seriousness and recidivism factors. There is simply nothing in the record to support any findings under the sections cited by appellant.

{¶ 47} Accordingly, the trial court did not err in sentencing appellant to the maximum term of incarceration for a first-degree felony.

{¶ 48} We do, however, find merit in appellant's assertion that the trial court erred in ordering him to pay restitution to the victims in the amount of $15,000.

{¶ 49} With respect to a trial court's ability to order restitution, this court held the following in *State v. King* (Feb. 27, 1998), 6th Dist. No. WD–97–015, 1998 WL 102133: "In an order of restitution, the amount of restitution must bear a reasonable relationship to the loss suffered. *State v. Marbury* (1995), 104 Ohio App.3d 179, 181, 661 N.E.2d 271; see, also, R.C. 2929.18(A)(1). Thus, it is held that restitution is limited to the actual loss caused by the defendant's criminal conduct for which he was convicted. *State v. Brumback* (1996), 109 Ohio App.3d 65, 82, 671 N.E.2d 1064. There must be competent and credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty. Id. at 83 [671 N.E.2d 1064]; *State v. Warner* (1990), 55 Ohio St.3d 31, 69, 564 N.E.2d 18."

{¶ 50} The record before this court contains no evidence relative to the court's order of restitution. Although the victims testified as to their injuries and items stolen from their home, there is no evidence as to the actual loss caused by appellant's criminal conduct.

{¶ 51} Accordingly, the third assignment of error is well taken in part.

{¶ 52} On consideration whereof, the court finds that the judgment of the Wood County Court of Common Pleas is affirmed as to the conviction for aggravated burglary and the sentence of ten years in prison and reversed as to the court's restitution order. This case is remanded to the trial court for further proceedings consistent with this decision. The parties are ordered to pay their own court costs of this appeal, and judgment is hereby awarded to Wood County accordingly. See App.R. 24.

Judgment affirmed in part
and reversed in part.

HANDWORK, J., and SINGER, P.J., concur.