OPINION
This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Melanie K. Agnes, appeals from the trial court's decision to impose an eighteen month sentence.
On May 25, 1999, appellant was charged by way of information with four counts of misuse of credit cards, a felony of the fifth degree, in violation of R.C. 2913.21; one count of misuse of credit cards, a felony of the fourth degree, in violation of R.C. 2913.21; one count of theft, a felony of the fifth degree, in violation of R.C. 2913.02; and one count of grand theft, a felony of the fourth degree, in violation of R.C. 2913.02.
The following facts are relevant to this appeal. Appellant was authorized to make purchases for her employer/victim, Daniel Meeks ("Mr. Meeks"), through the use of credit cards and checks. For almost a year, while still employed by Mr. Meeks, appellant made numerous, repeated and unauthorized charges on her employer's credit card. Prior to this matter, appellant did not have a criminal record. Items purchased by appellant included, but was not limited to, the following: a fence to keep her dog in the yard; a fish aquarium; speakers; a shed; a computer; a computer desk; an entertainment center;[1] and $400 at Victoria's Secret. In addition, the victim was invited to appellant's wedding. However, unknown to Mr. Meeks, appellant had purchased limousine transportation and catering service for her wedding through the use of his credit card and check.[2] Additionally, the presentence investigation report revealed the following statement by appellant: "I was so relieved when I told them what I had done. It could have gone onforever. They totally trusted me." (Emphasis added.)
As a direct result of appellant's criminal activities, Mr. Meeks has been forced to begin a three to five year process of repaying appellant's debts. Further, appellant's criminal activities affected not only Mr. Meeks, but also his company's reputation and his employees.[3]
On June 2, 1999, appellant entered a written guilty plea to all the charges. We note that the written guilty plea failed to provide an estimate figure for the value of the stolen property.[4] Although the plea agreement, which was signed by appellant and her attorney, indicated that appellant would be responsible for paying restitution, no monetary figure was provided. The trial court formally accepted the pleas through a judgment entry dated June 3, 1999, referred the matter to the probation department for a preparation of a presentence investigation report, and ordered a victim impact statement.
This matter came on for a sentencing hearing on June 28, 1999. At the beginning of the hearing, the trial court explained that the possible penalties faced by appellant were six to twelve months on the fifth degree felonies and six to eighteen months on the fourth degree felonies. The court mentioned that it had reviewed the presentence investigation report and the victim impact statement. The victim, Mr. Meeks, was present and made a statement wherein he expressed the devastating impact the criminal actions committed by appellant had on his business and his employees. He admitted that it will take him three to five years to pay off the debts incurred by appellant and noted that the items purchased by appellant were luxury items, not necessities. Further, Mr. Meeks had a close relationship with appellant and stated that he treated her like his daughter — if she needed something, he would have given it to her.
Mr. Meeks' victim impact statement was reviewed by the trial court as well. The report indicated that he had to shut down his company for several weeks so to assess the damage caused by appellant. As a result of the financial strain imposed on the company by appellant's acts, he had to release half a dozen employees. Further, Mr. Meeks admitted to being involved in several lawsuits with certain retailers as a result of appellant's actions.
Prior to imposing the eighteen month sentence, the court recited on the record its findings with respect to the aggravating factors justifying the imposition of a prison sentence rather than community control sanctions:
 "The Court: The Court has reviewed the recommendations I mentioned, the presentence investigatory report, and evaluated the circumstances pursuant to 2929.12(B), and the Court is going to make a specific finding that the victim is this case, be it individual or corporate, did suffer serious economic harm; that you [appellant] did use your position of trust in order to exploit the largeness of this man's [Mr. Meeks] company; that you used your position with him and the manner in which you did over a period of time was such that your conduct, in my mind's eye, was something of an on-going thing likely to continue; and the relationship with the victim that actually facilitated the offense that was committed, and accepted as — and I don't think it's disputed about the other things — but I don't think it's disputed that, quote/unquote, he treated you like a daughter. There is a presumption in favor of community control sanctions, but those things being taken into consideration do overcome the presumption. The Court only needs to find one, I found three."
 Thus, the trial court found that these aggravating factors overcame the presumption for community control and imposed the following sentence on appellant: concurrent six month prison terms on each felony of the fifth degree and concurrent twelve month prison terms on each felony of the fourth degree. However, the court ordered that the six and twelve month terms run consecutive for a total aggregate sentence of eighteen months. It was further ordered by the trial court that appellant pay the victim restitution in the amount of $45,000. This amount was subject to change upon submission of appropriate documentation by Mr. Meeks.
We note that the court did not sentence appellant to the maximum allowable prison term.[5] In its judgment entry of sentence dated July 1, 1999, the trial court again described its reasoning with respect to imposing a prison sentence rather than community control.
 "The Court has considered the factors under Revised Code Section 2929.13(B) and finds that the defendant [appellant] held a position of trust with the victim, Daniel Meeks, and used that position to facilitate her crimes. As a result, Mr. Meeks suffered significant economic harms.
 "For reasons stated on the record, and after consideration of the factors under Revised Code 2929.12, the Court also finds that prison is consistent with the principles and purposes of sentencing set forth in Revised Code Section 2929.11
and the defendant is not amenable to an available community control sanction.
 "The Court finds pursuant to Revised Code Section 2929.14(B) that the shortest prison term will demean the seriousness of the Defendant's conduct.
 "Pursuant to Revised Code Section 2929.14(E) the Court finds for the reasons stated on the record that consecutive sentences are necessary to protect the public from future crime or to punish the Defendant and are not disproportionate to the seriousness of the Defendant's conduct and the danger the Defendant poses to the public and the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of the Defendant's conduct.
 "Therefore, the imposition of consecutive sentence is warranted in this case."
 From this judgment, appellant timely filed a notice of appeal, assigning a single assignment of error for our consideration:
 "The trial court abused its discretion when it sentenced appellant to eighteen months in Marysville Prison."
 With respect to her single assignment of error, appellant has presented two separate issues for our review. First, appellant argues that R.C. 2929.12(B) does not support the three factors identified by the trial court.
Before addressing the substance of appellant's argument, we need to articulate the appropriate standard of review. Appellant concedes that a trial court's sentencing decision is reviewed under an abuse of discretion standard. Thus, on appeal, the conclusion of the sentencing court will not be disturbed absent an abuse of discretion. State v. Long
(1978), 53 Ohio St.2d 91, 98. An abuse of discretion is more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Therefore, "[o]nly if the record is so devoid of support for the trial court's sentencing determination as to demonstrate an abuse of discretion will this court interfere with that sentence." State v. Polhamus (June 18, 1999), Montgomery App. No. 172832, unreported, at 3, 1999 WL 1124605; see, also,State v. Finks (June 9, 2000), Portage App. No. 98-P-0129, unreported, at 4-5, 2000 Ohio App. LEXIS 2488 (applying the abuse of discretion standard when determining whether the trial court erred in imposing a prison term rather than community control sanctions).
In deciding whether to disturb the sentence imposed by the trial court, R.C. 2953.08(F) requires us to review, among other things, the presentence investigation report, the trial record, and any oral or written statements made to or by the court when the sentence was imposed.State v. Sutherland (Aug. 15, 1997), Greene App. No. 97CA25, unreported, at 3, 1997 WL 464788.
We recognize that the trial court is not required to explain its findings when deciding whether to impose a prison sentence or community control sanctions upon an offender who commits a fourth C or fifth degree felony. State v. Edmonson (1999), 86 Ohio St.3d 324, 326. However, the record must indicate that the trial court made all the requisite findings when determining whether to impose a prison sentence or community control sanctions on an offender who commits a fourth or fifth degree felony. Edmonson at 326.
In addition, the sentence imposed upon the offender should be consistent with the overriding purposes of felony sentencing, which is "to protect the public from future crime by the offender and * * * to punish the offender." R.C. 2929.11(A). The trial court is given broad discretion in determining the most effective way to uphold these objectives when sentencing an offender. State v. Wright (1998),126 Ohio App.3d 628, 631. The trial court is guided in its discretion by subsections (B), (C), (D), and (E) of R.C. 2929.12, which enumerates the factors that the court should consider when evaluating the seriousness of the offender's conduct and the likelihood of the offender's recidivism.Wright at 631. Further, under R.C. 2929.14(B), the trial court must impose the shortest prison term authorized on an offender who has not served a previous prison term, unless it finds on the record that to do so would demean the seriousness of the offense or, alternatively, that such a term "will not adequately protect the public from future crime by the offender or others."
In imposing a sentence for a felony of the fourth or fifth degree, the trial court must determine whether one of the factors enumerated in R.C.2929.13(B)(1) is present. If the trial court finds that one of these factors is present, that a prison term is consistent with the purposes of sentencing or that the defendant is not amenable to community control sanction, a prison term must be imposed. R.C. 2929.13(B)(2)(a). In making these determinations, the trial court must consider all relevant factors, including the factors affecting the seriousness of the offenses and the potential for recidivism found in R.C. 2929.12(B) through (E). See R.C. 2929.12(A).
In the instant matter, appellant does not dispute that the trial court failed to adhere to R.C. 2929.11, 2929.13 or 2929.14. Rather, appellant is effectively claiming that the consecutive sentence imposed on her was improper because R.C. 2929.12(B) does not support the three factors identified by the trial court. As a result, appellant maintains that the trial court abused its discretion when it sentenced her to prison rather than community control sanctions.
Appellant continues to assert that although she enjoyed the exclusive right to use her employer's/victim's credit card, the trial court improperly interpreted this undisputed fact as a factor under R.C.2929.12(B) to rebut the presumption of community control. Appellant posits that she "did not use her job [sic] to facilitate her crime, she used her employer's credit card a card which was given to her because she was like a daughter to him." Further, under appellant's rationale, only the corporation, not the victim himself, suffered financial harm. Finally, appellant argues that her relationship with the victim did not facilitate the offense; rather, the employer's willful decision to give his employee/appellant the credit card facilitated the criminal offenses.
Thus, the precise issue before this court is whether R.C. 2929.12(B) supports the factors identified by the trial court.
The factors set forth in R.C. 2929.12(B) and (C) relate to the seriousness of the offender's conduct. The R.C. 2929.12(B) factors are as follows:
 "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 "(6) The offender's relationship with the victim facilitated the offense.
 "(7) The offender committed the offense for hire or as part of an organized criminal activity.
 "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
 "(9) If the offense is a violation of section 2919.25
or a violation of section 2903.11, 2903.12, or 2903.13
of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children."
"The trial court may, in its discretion, impose a community control sanction instead of incarceration." Polhamus at 3. However, before doing this, the trial court is required to find, after considering the seriousness factors in R.C. 2929.12(B) and (C) that community control sanctions would not demean the seriousness of the offense. Id.
At the sentencing hearing, appellant's counsel argued in favor of community control sanctions, contending that appellant was a mother of two minor children, was presently working, had no prior criminal record, had cooperated with the police and the probation department, tested negative for drug use and felt remorse for taking advantage of Mr. Meeks' friendship and the position of trust she held with the company. Nevertheless, the trial court found that the presumption in favor of community control sanctions was overcome.
Here, the trial court carefully considered the factors set out in R.C.2929.12 before sentencing appellant. The trial court even stated on the record during the sentencing hearing that it was considering R.C. 2929.12
sentencing factors in reaching its decision.[6] The court also noted on the record that the seriousness of appellant's conduct was heightened because the victim suffered serious economic harm as a result of appellant's criminal acts. This is an existing factor under R.C.2929.12(B)(2).
Although appellant suggests that the company, not the victim himself, suffered financial harm, her argument is absolutely baseless. There is a person behind this company, and that person is Mr. Meeks. We indicated earlier that, as a result of appellant's long term criminal activity, which occurred during her employment with Mr. Meeks' company, he had to shut down his company for several weeks so he could assess the damage caused by appellant. As a result of the financial strain imposed on the company by appellant's acts, he had to release half a dozen employees. Moreover, the professional business reputation Mr. Meeks spent twenty years building was damaged in that he is now involved in several lawsuits with certain retailers as a result of appellant's actions.[7]
Further, the trial court alluded that appellant's position of trust with the victim was used to exploit his company. The victim trusted appellant due to their working and personal relationship, and thus authorized her to purchase items for the company through the use of his credit cards and checks. As a result, Mr. Meeks, his company and his employees had to suffer the consequences. Accordingly, appellant's actions fall within R.C. 2929.12(B)(5) and (6).
The court also cited that appellant's relationship with the victim facilitated the offenses. Appellant and the victim undisputedly had a close relationship to the extent that the victim treated appellant like a his daughter; nevertheless, appellant chose to abuse and take advantage of this relationship in order to commit crimes against Mr. Meeks and his company. Again, this factor is reflected in R.C. 2929.12(B)(6).
None of the mitigating factors contained in R.C. 2929.12(C) were found to apply to appellant's case.[8] Although appellant did not have a prior criminal record, was cooperative with the authorities, and the presentence investigation report indicated that she "appeared remorseful," the trial court found that appellant's conduct "was something of an on-going thing and likely to continue[.]" Such a finding is supported by the presentence investigation report where appellant stated: "I was so relieved when I told them what I had done. It could have gone onforever. They totally trusted me." (Emphasis added.) Moreover, appellant's theft and misuse of credit cards continued for nearly a year while she was employed at the victim's company. This conduct illustrates appellant's repeated and continued abuse of the victim, which, as she admitted to, "could have gone on forever."
In addition to reviewing the seriousness and recidivism factors, the trial court reviewed the factors listed in R.C. 2929.13(B) for sentencing an offender of a fourth or fifth degree felony, which is reflected in its July 1, 1999 judgment entry of sentence. Upon considering R.C. 2929.13(A), the trial court found that appellant held a position of trust with the victim and used that position to facilitate her crimes. This factor is reflected in R.C. 2929.13(B)(1) which states in pertinent part:
 "(d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others."
 For the reasons stated on the record and after considering the factors enumerated in R.C. 2929.12, the trial court found that prison was consistent with the principles and purposes of sentencing set forth in R.C. 2929.11, and that appellant was not amenable to an available community control sanction. In accordance with R.C. 2929.13(B)(2)(a), the trial court also concluded that the imposition of a prison term was necessary to uphold the purpose of felony sentencing, and a consecutive sentence was necessary in order to protect the public from appellant.
We are aware that the trial court has broad discretion when sentencing within the statutory limits. Wright at 632. As indicated, the sentence here was within the statutory limits proscribed in R.C. 2929.14. Accordingly, we hold that the trial court imposed the sentence only after identifying certain factors in R.C. 2929.12(B). Likewise, we find no merit in appellant's claim that R.C. 2929.12(B) does not support the three factors identified by the trial court. Our review of the factors listed in R.C. 2929.12(B) indicates that the three factors identified by the trial court do exist under this statute. As a result, there is evidence in the record to support the sentence imposed on appellant by the trial court. This court, therefore, cannot find that the trial court abused its discretion when it imposed the consecutive sentence in order to protect the public from future crime and from appellant.
In addition, appellant presents a second issue for our consideration under her single assignment of error. Here, appellant sets forth the contention that despite a guilty plea, which included her admission that she was responsible for $30,000 in merchandise, the trial court insisted on "embarking on its own unnecessary fact-finding expedition to determine the amount of merchandise purchased" by her. Appellant suggests that "[a]s per her plea agreement, she estimated the value of the stolen goods at $30,000." Appellant also points out that she told the court she did not know the exact amount of the stolen merchandise. Despite this admission, appellant claims that the court set the value of the stolen property at $45,000 without explaining how it came to this precise figure, and thus, abused its discretion.
In this matter, the trial court ordered appellant to pay restitution in the amount of $45,000. Thus, appellant seems to be challenging the trial court's order requiring her to pay this restitution amount to the victim.
Initially, we note that appellant failed to object to the imposition of this restitution amount to the trial court. It is well-established in Ohio that an appellate court need not consider an error which was not objected to the court below. State v. Marbury (1995), 104 Ohio App.3d 179,181, citing State v. Williams (1977), 51 Ohio St.2d 112. Thus, appellant has waived all errors except plain error. Marbury at 181.
Crim.R. 52(B) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We have determined that plain error exists in this case for the following reasons.
A trial court is required to make a determination as to the amount of restitution. State v. Cockerham (1997), 118 Ohio App.3d 767, 770. It is well-settled that "there must be a due process ascertainment that the amount of restitution bears a reasonable relationship to the loss suffered." State v. Williams (1986), 34 Ohio App.3d 33, 34. The court went on to explain:
 "Generally, the right to order restitution is limited to the actual damage or loss caused by the offense of which the defendant is convicted. Implicit in this principle is that the amount claimed must be established to a reasonable degree of certainty before restitution can be ordered." Williams at 34.[9]
 The Supreme Court of Ohio has reaffirmed this notion in State v. Warner (1990), 55 Ohio St.3d 31, 69, where it held that there must be sufficient evidence in the record from which the court can ascertain the amount of restitution to a reasonable degree of certainty. Additionally, a court may consider a presentence investigation report when ordering restitution. State v. Brumback (1996), 109 Ohio App.3d 65, 84, citing State v. Deal (Sept. 27, 1990), Cuyahoga App. No. 57458, unreported, 1990 WL 139816.
In the present matter, the record reveals that at the sentencing hearing, appellant was asked by the trial court what she estimated the total loss to be:
 "The Court: You're [appellant] admitting to about $30,000 worth of theft? The initial reports were $45,000, and I believe in the victim's statement they though it might be closer to 60 [$60,000]?
"The Defendant: I don't know about all that.
"* * *
 "The Court: What do you estimate the total of that loss?
 "The Defendant: I don't know for sure, but the best that I can tell is about over $45,000. I was at a meeting with Detective Witt and so I know it's over that amount. I don't have an exact amount."
 It is evident from the above testimony that the trial court was uncertain or unclear as to the amount of loss incurred by the victim as a result of appellant's criminal acts. The court's uncertainty as to the amount of loss is also apparent on the face of its July 1, 1999 judgment entry of sentence. There, the court ordered appellant pay the victim restitution in the amount of $45,000, but stated that this amount was subject to change upon submission of appropriate documentation by Mr. Meeks.
Although Mr. Meeks appeared at the sentencing hearing, no documentation was submitted by him to the trial court to prove the actual loss caused by appellant's criminal acts. Contrary to appellant's assertion, the written plea agreement failed to provide a monetary figure as to the amount of restitution to be paid by appellant or the value of the stolen property.
Accordingly, we are of the opinion that the restitution amount ordered by the trial court cannot be said to bear a reasonable relationship to the actual loss suffered since the actual loss was never shown with reasonable certainty by the victim. As we indicated, the victim never submitted to the trial court any documentary evidence of the amount of loss incurred from appellant's crimes. Further, the figures presented to the court through the presentence investigation report and the victim impact report were merely estimates.[10] See Marbury at 181-182 (holding that the restitution order was error where there was no documentary evidence of the amount of the restaurant's loss from the defendant's embezzlement); see, also, Willowick v. Gibaldi (Feb. 21, 1997), Lake App. No. 96-L-079, unreported, at 2, 1997 WL 123974 (holding that the trial court may not summarily decide the amount of restitution due without allowing the parties to submit evidence). Therefore, the restitution order in this case was improper.
This court is not disputing that substantial economic loss was suffered by the victim as a result of appellant's criminal activity. However, the types of losses claimed by the victim could readily have been substantiated by the submission of credit card statements, bank statements, bills or any other document showing that expenses were incurred by the victim as a result of appellant's crimes. Further, these bills or statements could have been attached to the victim impact statement and would be prima facie evidence of the reasonableness of the loss incurred by the victim. Williams at 35.
For the reasons stated above, appellant's argument as to the restitution amount set by the trial court is well-taken. The order of restitution is set aside, and we remand the cause to the trial court solely to allow the parties to present evidence on the matter of loss incurred by the victim as a result of appellant's criminal activity.
Based on the foregoing analysis, the judgment of the trial court is affirmed in part with regard to the imposition of the eighteen month prison sentence. In regard to the imposition of restitution, the judgment of trial court is reversed in part and the case is remanded for further proceedings consistent with this opinion.
 __________________________________ JUDGE MARY CACIOPPO, Ret., Ninth Appellate District, sitting by assignment.
FORD, P.J., NADER, J., concur.
[1] The entertainment center was admitted to by appellant during her presentence interview which is documented in the presentence investigation report.
[2] The catering service was admitted to by appellant during her presentence interview which is documented in the presentence investigation report.
[3] This is reflected in Mr. Meeks' victim impact statement which was submitted to the trial court.
[4] Nevertheless, appellant contends in her brief to this court that "[a]s per her plea agreement, she estimated the value of the stolen goods at $30,000." This issue will be addressed later in this court's opinion.
[5] R.C. 2929.14(A)(4), which governs prison terms, provides a minimum prison term of six months and a maximum of eighteen months for offenders who committed a fourth degree felony. An offender convicted of a fifth degree felony may receive a minimum prison sentence of six months or a maximum of twelve months under R.C. 2929.14(A)(5).
[6] This court has held:
 "* * * [A]ccording to the new sentencing guidelines, the findings mandated by R.C. 2929.12 and R.C. 2929.14
must appear somewhere on the record, whether it be the judgment entry, the transcript of the sentencing hearing, or somewhere on the record of the sentencing exercise." State v. Wilson (June 23, 2000), Lake App. No. 99-L-026, unreported, at 6, 2000 Ohio App. LEXIS 2766.
[7] This statement was made by Mr. Meeks in his victim impact statement.
[8] R.C. 2929.12 states in pertinent part:
 "(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
"(1) The victim induced or facilitated the offense.
 "(2) In committing the offense, the offender acted under strong provocation.
 "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."
[9] In Williams, the sums claimed to be lost were never identified with certainty prior to the court ordered restitution; rather, the figures presented to the court were merely estimates. Id. at 34.
[10] Upon review of the record, the following evidence was submitted to support the imposition of a $45,000 restitution amount: (1) in the presentence investigation report, the official police version portion, Mr. Meeks stated to the police that he believed appellant was responsible for stealing anywhere from $20,000 to $45,000 from his company; (2) in the victim impact statement, Mr. Meeks stated that he could provide documentation of about $60,000 that was taken from his company. However, no documentation was attached to his victim impact statement.