OPINION
Defendant-appellant, Donald R. Swart, Jr., appeals his convictions in the Clinton County Court of Common Pleas for involuntary manslaughter.
On the morning of August 22, 1999, Fred Greenfield was driving his car eastbound on State Route 350 in Clinton County. Neva Stiver and Carolyn Louise Griffith were passengers in the vehicle. At the same time, appellant was driving a pickup truck southbound on Farmers Road. Appellant was operating the truck illegally as his driving privileges had been suspended until November 20, 1999 due to an earlier conviction for a drug offense.
State Route 350 intersects with Farmers Road. There are stop signs at the intersection for the southbound and northbound traffic traveling on Farmers Road. As Greenfield drove through the intersection, appellant failed to come to a complete stop, proceeding into the intersection at a speed of approximately seventeen m.p.h. Greenfield attempted to stop his vehicle and skidded approximately twenty-six feet before appellant's truck collided with Greenfield's car. As a result of the impact, Greenfield's car left the road and struck a fence post located off of the southeast corner of the intersection.
Greenfield sustained physical injuries as a result of the collision. Griffith was killed by blunt force injuries to the head, chest and abdomen. Stiver received severe physical injuries and was flown to the Miami Valley Hospital for treatment. She remained in the hospital for forty-seven days until she died from her injuries.
Appellant was indicted on two counts of involuntary manslaughter for the deaths of Griffith and Stiver. Appellant pled no contest to both charges. The trial court found appellant guilty of both counts and sentenced him to two consecutive terms of four years in prison. The trial court also ordered appellant to pay restitution in the amount of $304,813.29 to Stiver's estate, $10,298.98 to Griffith's estate and $22,324.64 to Greenfield.
Appellant appeals the decision of the trial court and raises two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT CONVICTED AND SENTENCED HIM FOR INVOLUNTARY MANSLAUGHTER.
 In his first assignment of error, appellant maintains that the trial court erred by convicting him for involuntary manslaughter. He argues that he cannot be convicted of involuntary manslaughter because the indictments state that driving under suspension was the proximate cause of the deaths of Griffith and Stiver. Appellant maintains that the offense of driving under suspension cannot support a conviction for involuntary manslaughter and requests this court to modify his convictions to vehicular homicide.
Appellant was convicted of involuntary manslaughter in violation of former R.C. 2903.04(B), which provided, in relevant part:
 No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third or fourth degree, or a minor misdemeanor.[1]
 The indictments charge appellant with causing the deaths of Griffith and Stiver "as a proximate result" of his "committing or attempting to commit a misdemeanor of the first degree, to wit: Violation of Section 4507.02(D)(2) of the Ohio Revised Code, Driving Under Suspension * * *."
When the state drafted the indictments in this case, it was well-established that criminal responsibility for involuntary manslaughter is limited to those instances where the death was the natural, logical and proximate result of the defendant's commission of the predicate offense. See, e.g., Black v. Slate (1921), 103 Ohio St. 434, paragraph one of the syllabus; State v. Losey (1985), 23 Ohio App.3d 93,95. Further, driving under suspension or without a valid Ohio driver's license had been held not to be the proximate cause of deaths that occur when a person drives with a suspended license. See, e.g., State v.Voland (1999), 99 Ohio Misc.2d 61, 75; State v. Jodrey (Apr. 10, 1985), Hamilton App. No. C-840406, unreported.
The state acknowledges the defect in the indictment and argues that the trial court "effectively amended" the indictment when the state presented evidence that appellant proximately caused the deaths of Griffith and Stiver by failing to yield to a posted stop sign. Alternatively, the state contends that appellant waived any defects in the indictment by failing to challenge the indictment in the trial court.
Crim.R. 7(D) provides, in part that "[t]he court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." When the trial court amends an indictment or grants a motion by the state to amend an indictment, such amendments must be affirmatively reflected on the record. State v. Mosley (1993),88 Ohio App.3d 461, 465. There is nothing in the record in this case indicating that the trial court amended the indictment, nor are there any written or oral motions by the state seeking to amend the indictment. We are unable to find any authority and the state provides no relevant authority for the proposition that an indictment can be magically amended without some affirmative action by the trial court or the parties.
The state's position that appellant waived his rights to challenge the sufficiency of the indictment on appeal is also incorrect. Appellant pled no contest to the charges in the indictments. A plea of no contest is not an admission of guilt, but is an admission of the truth of the facts alleged in the indictment, information and complaint. Crim.R. 11(B)(2). As such, the very essence of a no contest plea preserves the issue of the sufficiency of an indictment for appeal. State v. Luna
(1994), 96 Ohio App.3d 207, 209.
Therefore, the validity of appellant's convictions turns on whether the indictments are sufficient to charge him with the crime of involuntary manslaughter even though they incorrectly identify driving under suspension as the predicate offense. We conclude the indictments are valid.
A criminal indictment serves two purposes. First, an indictment compels the government to aver all material facts constituting the essential elements of an offense, providing the accused adequate notice and the opportunity to defend the charges. State v. Childs (2000),88 Ohio St.3d 194, 198; State v. Sellards (1985), 17 Ohio St.3d 169,171. Second, the indictment, by identifying and defining the offenses, serves to protect the accused from future prosecutions for the same offenses. Id.
Generally, an indictment is sufficient if it states the charge against defendant in the words of the applicable criminal statute. Childs,88 Ohio St.3d at 199; Crim.R.7(B). Extraneous, impertinent or superfluous averments in an indictment are mere surplusage and they do not make an otherwise sufficient indictment fatally defective. R.C. 2941.08(I);State ex rel. Leichner v. Alvis (App. 1952), 65 Ohio Law Abs. 420, 421-22.
An indictment for involuntary manslaughter under former R.C. 2903.04(B) is sufficient if, using the language of the statute, it charges the defendant with causing the death of a victim as "a proximate result of committing or attempting to commit a minor misdemeanor." State v.Hython (Oct. 19, 1994), Medina App. No. 2302-M, unreported; State v.Whitley (Jan. 8, 1987), Ross App. No. 1225, unreported. An indictment for involuntary manslaughter does not need to set forth the predicate offense or specify either the manner in which or means by which the death was caused. R.C. 2941.14; State v. Schaeffer (1917), 96 Ohio St. 215, paragraph two of the syllabus; State v. Haffey (Sept. 2, 1993), Cuyahoga App. No. 63576, unreported; State v. Mineer (C.P. 1983), 8 Ohio Misc.2d 11,12.
The indictments in this case mirror the statutory language of former R.C. 2903.04(B) to the extent that they charge appellant with causing the deaths of Griffith and Stiver "as a proximate result" of his "committing or attempting to commit a misdemeanor." There was no need for the state to set forth the predicate offense or specify either the manner in which or means by which he caused their deaths. The averments in the indictments describing the predicate offense as driving under suspension are impertinent and superfluous, but they do not vitiate the indictment. Accordingly, we hold that the indictments in this case are not fatally defective and that they sufficiently apprise appellant that he has been charged with the crime of involuntary manslaughter.
Since a plea of no contest under Crim.R. 11(B)(2) is not "an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment," the trial court must find the defendant guilty of the charged offense when the indictment contains sufficient allegations to state a felony offense. State v. Bird (1998),81 Ohio St.3d 582, syllabus. In Bird, the indictment charged that the defendant "* * * in violation of section 2903.11 of the Revised Code, did knowingly cause or attempt to cause physical harm to [the victim] by means of a deadly weapon, to wit: spit and/or saliva." Id. at 584. Bird, a prison inmate infected with the human immunodeficiency virus, argued on appeal that saliva could not support a conviction for felonious assault with a deadly weapon under R.C. 2903.11 because saliva is not a deadly weapon. The supreme court held the indictment contained sufficient allegations to state the felony offense of assault with a deadly weapon as it mirrored the language of the statute and, as such, Bird was foreclosed from challenging whether saliva was a deadly weapon.Id. at 584-85. By pleading no contest, Bird admitted that he knowingly caused or attempted to cause physical harm to the victim with a deadly weapon. Id. Since the indictment contained allegations sufficient to state a felony offense, the trial court was required to find him guilty.Id. at 584.
Similarly, the indictments in this case are sufficient to charge appellant with two counts of involuntary manslaughter. Since appellant pled no contest to both counts, he admitted to causing the deaths of Griffith and Stiver "as a proximate result" of his "committing or attempting to commit a misdemeanor" and the trial court was required to find him guilty. Thus, the trial court did not err by finding appellant guilty of the charged offenses. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY ORDERING EXCESSIVE RESTITUTION.
 In his second assignment of error, appellant maintains that the trial court erred by ordering him to pay restitution to Greenfield because he was never convicted for a crime where Greenfield was a victim. Appellant also argues that the state presented "no evidence" to support the trial court's order of restitution for Stiver and Griffith other than the "prosecutor's statement as to the amount of each claim and the purported bills." Appellant also maintains that the trial court should have considered whether any of the decedents' losses "[were] covered by insurance or any other third party."
A trial court imposing a sentence upon an offender for a felony may sentence the offender to a financial sanction, including restitution. R.C. 2929.18(A). An appellate court may not disturb an imposed sentence unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. R.C. 2953.08(G)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. The applicable record to be examined by a reviewing court includes the following: (1) the presentence investigative report; (2) the trial court record in the case in which the sentence was imposed; and (3) any oral or written statements made to or by the court at the sentencing hearing at which the sentenced was imposed. R.C. 2953.08(F)(1)-(3). The sentence imposed upon the offender should be consistent with the overriding purposes of felony sentencing: "to protect the public from future crime by the offender" and "to punish the offender." R.C. 2929.11(A).
Pursuant to R.C. 2929.18(A)(1), a trial court may order a felony offender to pay restitution to the victim of the offender's crime, or any survivor of the victim, in an amount based on the victim's economic loss. Economic loss is "any detriment suffered by a victim as a result of criminally injurious conduct and includes any * * * property loss, medical cost, or funeral expense incurred as a result of the criminally injurious conduct." R.C. 2929.01(N). Criminally injurious conduct is conduct that poses a substantial threat of personal injury or death. R.C. 2929.01(G); R.C. 2743.51(C)(1). Therefore, restitution is a valid statutory sanction to compensate crime victims for crimes that pose the threat of personal injury or death. State v. Ward (1999),135 Ohio App.3d 76, 81.[2]
However, restitution is limited to the actual loss caused by the offender's criminal conduct for which he was convicted. State v.Brumback (1996), 109 Ohio App.3d 65, 82. The amount of restitution ordered by the trial court must bear a reasonable relationship to the loss suffered by the victim. State v. Marbury (1995), 104 Ohio App.3d 179,181. The trial court does not need to conduct a hearing to ascertain the reasonableness of the restitution if there is enough evidence in the record to substantiate the relationship of the offender's criminal conduct with the amount of the victim's loss. Brumback,109 Ohio App.3d at 83.
Turning to the facts of this case, it appears that appellant has not been charged or convicted with regard to any criminal conduct involving Greenfield. The state specifically indicted appellant on two counts of involuntary manslaughter for the deaths of Stiver and Griffith. The trial court convicted appellant of both counts. Therefore, the trial court only had the authority to sentence appellant to pay restitution to the estates of Stiver and Griffith. Just as the trial court could not sentence appellant to serve a prison term for any crime involving Greenfield for which he was not charged or convicted, the trial court could not sentence appellant to pay restitution to Greenfield. This is not to say that appellant may never be sentenced to pay restitution to Greenfield, but the state must first charge appellant with felonious conduct that caused economic losses to Greenfield and then obtain a conviction. To the extent that the trial court sentenced appellant to pay restitution to Greenfield, that portion of the sentence is contrary to law.
Contrary to appellant's remaining assertions, there is ample evidence in the record to support the restitution the trial court ordered appellant to pay to the estates of Griffith and Stiver. The record is replete with the medical and funeral bills presented by the state at the sentencing hearing. From these bills the trial court ascertained the amount of restitution that it ordered appellant to pay. The bills have a direct relationship to the losses suffered by Griffith, Stiver and their estates. Appellant provides no authority for his conclusory assertion that the trial court must consider third party payments, such as insurance, before sentencing an offender to pay restitution. Since a trial court may also order an offender to reimburse any third party for an amount paid to the victim or on the victim's behalf for economic loss resulting from the offense, we hold that the trial court did not err by not considering third party benefits to the victims. See R.C.2929.18(A)(1). The restitution that the trial court ordered appellant to pay to the estates of Griffth and Stiver is supported by clear and convincing evidence and is not contrary to law.
Accordingly, appellant's second assignment of error is sustained in part and overruled in part. Appellant's sentence requiring him to pay restitution to the estates of Griffith and Stiver is affirmed. Pursuant to App.R. 12(B), that portion of appellant's sentence requiring him to pay restitution to Greenfield is vacated.
Judgment affirmed in part and reversed in part.
YOUNG, J., concurs.
WALSH, J., dissents.
[1] In his brief, appellant relies upon an amended version of R.C.2903.04, which differs significantly from the statute in effect at the time of his offense. This amended version of R.C. 2903.04 did not become effective until March 23, 2000, nearly seven months after the crash caused by appellant. It is fundamental that the validity of appellant's convictions must be tested in relationship to the version of the statute in effect at time he engaged in a criminally culpable course of conduct. This is consistent with the basic premise of our criminal justice system that a person is to have prior notice of what behavior is proscribed by law. Papachristou v. Jacksonville (1972), 405 U.S. 156, 162,192 S.Ct. 839, 843; see, also, R.C. 1.58(A).
[2] R.C. 2929.01 was amended, effective March 23, 2000, so that the term "economic loss" encompasses any economic detriment suffered by a victim as a result of the commission of any felony. This revision corrects the unfortunate anomaly under former R.C. 2929.01 which, in some cases, allowed criminals to profit from their crimes. See Ward,135 Ohio App.3d at 81-82 (Powell, P.J., concurring).