OPINION
Appellant, Brad S. Weiss, appeals from a decision of the Geauga County Court of Common Pleas ordering him to pay restitution to the victims of a criminal offense in the amount of $180,275. For the reasons that follow, we affirm the judgment of the trial court in part, reverse in part and remand for further proceedings consistent with this opinion.
The facts pertinent to this appeal are as follows. On September 29, 1997, appellant was indicted by the Geauga County Grand Jury on the following: one court of burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2); and one count of theft, a felony of the fifth degree, in violation of R.C.2913.02(A)(1). The indictment stemmed from allegations that appellant, on or about August 19, 1996, broke into the home of Raymond Jay and Lisa Elias stealing a large amount of jewelry and personal effects. To the above charges, appellant entered an initial plea of not guilty.
On January 15, 1998, a change of plea hearing was held wherein appellant, with counsel, entered a negotiated plea of guilty to one count of attempted burglary, a felony of the third degree, in violation of R.C. 2923.02(A) and R.C. 2911.12(A)(2), and one count of petty theft, a misdemeanor of the first degree, in violation of R.C. 2913.02. In exchange for pleading guilty to these reduced changes, appellant agreed to cooperate completely and testify against his co-defendant. Appellant was subsequently sentenced to serve a definite three-year term of incarceration on the attempted burglary charge and six months of the charge of petty theft, both offenses to be served concurrently. The trial court also ordered appellant to make restitution to the victims for those items that were stolen or damaged in an amount to be determined at a later date.
On July 16, 1998, a hearing was held to determine the total dollar amount of restitution that the victims were entitled to receive. At the hearing, Michael C. Auletta, co-owner of Gino's Jewelers in Woodmere, testified to a number of items that he sold to Mr. and Ms. Elias as well as some other items that the victims purchased elsewhere and brought to his store for repairs and/or appraisal. Based on the items he actually saw, Mr. Auletta appraised their total value at $79,725. This figure did not include the replacement cost for an antique watch that Mr. Auletta estimated would cost between $6,000 and $10,000 to purchase at auction.
Mr. Elias testified that appellant stole all of the items appraised by Mr. Auletta during the burglary of August 19, 1996. In addition to these items, Mr. Elias testified that appellant stole thirty-seven other items of jewelry that cost him a total of $86,225 to either purchase or replace. Mr. Elias explained that he purchases jewelry for his wife several times during the year and that he makes these purchases, aside from Mr. Auletta's store, at various antiques shows, Tiffany's, and shops in Europe. These thirty-seven additional items were never appraised and Mr. Elias testified that he never kept any receipts for these purchases. However, he testified as to the purchase price or replacement cost for each of the pieces of jewelry that were not formally appraised.
Ms. Elias confirmed that she owned all of the pieces of jewelry described by her husband and Mr. Auletta. The victims submitted a number of photographs depicting Ms. Elias wearing several items of jewelry to events that occurred prior to the burglary.
In addition to the jewelry that was stolen, evidence was presented that the victims had to replace the following: $950 for an antique jewelry box; $2,000 to replace a door broken into by appellant during the burglary; $3,200 to replace wallpaper damaged as a result of the burglary and its investigation; $75 for a monogrammed pillow case; and $50 to replace a pair of knobs for an antique dresser. As with many of their pieces of jewelry, the victims presented no documentary evidence to corroborate the amount of their loss. Of all the damages sustained as a result of the burglary, Mr. Elias testified that the victims' insurance only covered a total of $1,350.
Appellant also testified at the hearing of July 16, 1998. Although appellant admitted to breaking into the victim's home and stealing twenty to thirty pieces of jewelry in order to sustain his crack cocaine addiction, he denied stealing the number of items described by Mr. and Ms. Elias. He further testified that he went to a pawnshop to sell all of the items that he stole from the victims and was offered only $1,300 to $1,400 for eight pieces of jewelry. He believed that the other items that he had stolen were of no value and threw them away in a garbage dumpster. However, appellant acknowledged that he is not a jeweler and has no experience in buying or selling jewelry.
By judgment entry filed July 17, 1998, the trial court ordered appellant to pay the following, without further elaboration, as restitution to the victims:
"1. To Jay and Lisa Elias $1,725.00
2. To Lisa Elias $177,200.00
3. To American States Insurance Co. $1,350.00
 Total $180,275.00"
 From this judgment, appellant filed a timely notice of appeal and now asserts that the trial court erred in requiring him to make restitution for the portion of the court's award, namely $100,550.00, based solely on the unsubstantiated testimony of Mr. Elias. It is apparent that appellant is arguing that the judgment of the trial court is against the manifest weight of the evidence.
R.C. 2929.18(A)(1) permits a trial court to order an offender to pay restitution to the victim of the offender's crime "* * * in an amount based on the victim's economic loss." The amount of restitution ordered by the court must be established to a reasonable degree of certainty and the amount of restitution must bear a reasonable relationship to the actual loss sustained as a result of the offender's conduct. State v. Marbury (1995),104 Ohio App.3d 179, 181; State v. Brumback (1996), 109 Ohio App.3d 65,82-83. A trial court's restitution order will not be reversed by a reviewing court as being against the manifest weight of the evidence if some competent, credible evidence supports the order. See State v. Warner (1990), 55 Ohio St.3d 31, 69. It is well established that the weight to be given to evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In the present case, appellant does not question the value of any property appraised by Mr. Auletta. He does, however, ask this court to disregard the testimony presented by Mr. Elias as to the value of thirty-seven pieces of jewelry that were not formally appraised as well as the victim's alleged costs to repair or replace damage to their home and a few other personal effects. As to these items, appellant notes that no documentary evidence of any kind was produced to substantiate the victims' claims.
As previously noted, the trial court is in a far better position than this court, having actually seen the testimony before it, to gauge the credibility of the witnesses. We will not disturb the trial court's finding in this regard. Mr. Elias testified as to the purchase price or replacement cost for the thirty-seven pieces of jewelry, totaling $86,225, as well as a few other items that were stolen or damaged during the burglary. We have no basis for disturbing the trial court's judgment with respect to this portion of the trial court's award, as there was some competent, credible evidence as presented by the victims.
Notwithstanding our refusal to reverse the trial court's acceptance of Mr. Elias' testimony, we are troubled by the trial court's judgment ordering appellant to pay the victims restitution in a total amount of $180,275. We have absolutely no idea how the trial court arrived at this figure. By way of example, the trial court ordered appellant to pay restitution to Lisa Elias in the amount of $177,200, presumably to replace the total amount of jewelry stolen by appellant on August 19, 1996. Even if the trial court accepted the uncontroverted testimony of Mr. Auletta as to the appraised value of some of the items of jewelry, $79,725 (not including the antique watch valued at between $6,000 to $10,000), and the trial court further accepted Mr. Elias' testimony that an additional $86,225 worth of jewelry was stolen, the total of these amounts is short of the $177,200 referenced in the trial court's restitution order. We note that some of this confusion may have been caused by the state representing in closing arguments that Mr. Auletta appraised property totaling "$84,975" excluding the watch that "he priced at $6,000 to $10,000." We have totaled the jewelry appraised by Mr. Auletta and it does not equal $84,975. In the same vein, this court has no idea how the trial court arrived at the $1,725 figure payable to "Jay and Lisa Elias," presumably for the damage caused to their home as well as the disappearance of other personal effects attributed to appellant's crimes. We further question the award to the victims' insurance company. R.C. 2929.18(A)(1) states that "[t]he court shall not require an offender to repay an insurance company for any amounts the company paid on behalf of the offender pursuant to a policy of insurance." Consequently, we do find some merit to appellant's first assignment of error, albeit, not for the reasons necessarily argued in his brief to this court.
Based on the foregoing, we affirm the judgment of the trial court in part, reverse in part and remand for the trial court to provide further clarification and, if needed, correction as to its order of restitution.
JUDGE WILLIAM M. O'NEILL
CHRISTLEY, P.J.,
O'NEILL, J., (Joseph), Ret., Seventh Appellate District, sitting by assignment, concur.