[Cite as *State v. Klimczyk*, 2023-Ohio-3793.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :

                                   No. 112376

    v.                           :

JOSEPH KLIMCZYK,                  :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** October 19, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-22-672604-A, CR-22-673841-A, CR-22-647112-A,
CR-22-674126-A, CR-22-674127-A, CR-22-674128-A, CR-22-674129-A
CR-22-674130-A, CR-22-674656-A, CR-22-675129-A, and CR-22-675991-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carley Berman, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Joseph Klimczyk ("Klimczyk"), appeals his sentence in Cuyahoga C.P. No. CR-674129-A ("CR-674129").[1] Klimczyk claims that the trial court committed plain error when it imposed restitution. Klimczyk also claims that the trial court imposed an unconstitutional sentence under the Reagan Tokes Law. For the reasons set forth below, we affirm and remand for the issuance of a nunc pro tunc sentencing entry.

## I. Facts and Procedural History

{¶ 2} In CR-674129, Klimczyk pleaded guilty and was convicted of burglarizing the home of his grandparents, Richard Andrews ("Mr. Andrews") and Louise Andrews ("Mrs. Andrews") (collectively "Victims") in August 2022, in violation of R.C. 2911.12(A)(1), a second-degree felony. In January 2023, Klimczyk was sentenced in the instant case, as well as his 11 other cases. During the hearing, the trial court judge indicated that he reviewed Klimczyk's presentence-investigation report ("PSI") and Victims' victim-impact statement and was familiar with Klimczyk's criminal history and background. The PSI detailed the facts and circumstances surrounding Klimczyk's burglary of Victims' home and listed some of the damages sustained, items stolen, and their value. The PSI also indicated that Victims confirmed the accuracy of all of the information included in their victim-

---

[1] While this appeal only concerns CR-674129, we note that CR-674129 was part of a plea agreement where Klimczyk also pled guilty to ten other cases. We further note that immediately preceding the sentencing hearing, Klimczyk pled guilty to a 12th criminal case that is not part of this appeal. Consequently, the trial court's sentencing hearing involved all 12 of Klimczyk's cases.

impact statement, which was sent to the prosecutors and attached to the PSI. In the victim-impact statement, Mrs. Andrews listed a total for crime-related costs and the following personal belongings and personal property lost, destroyed, or damaged as a result of the crime: door; deadbolts and locks; safe; personal documents; jewelry, including some that she has had for over 50 years; marriage, birth, and social security certificates, etc.; and money.

{¶ 3} At the sentencing hearing, the prosecutor advised that Victims were present to discuss their request for restitution and conceded that, "[w]ith personal items like that, I don't have receipts; but they are here to talk to you about it themselves. I mean, a total for them is — is difficult to reach. I mean, the total that I was able to come up to * * * was approximately 30,000, but that's personal items that I don't have documents for." (Tr. 42.) Prior to hearing Mr. Andrews's statement, the trial court advised:

> You called the police on August 24th of 2022. You came home and noticed that your front and side doors were open. Side door was dented. The lock was broken. They entered your home. Noticed papers on the floor of the kitchen. His safe in the bedroom was stolen from a closet. The safe contained, as I've indicated earlier, passports, wills, around 2,000 in cash, a diamond ring worth $15,000, or appraised at $15,000. Jewelry boxes were stolen from their bedrooms. And that's what I know.

(Tr. 44.) Mr. Andrews then spoke on behalf of himself and Mrs. Andrews during the sentencing hearing. Mr. Andrews told the trial court that Klimczyk "br[oke] into our home and robb[ed] us of all our personal belongings that we worked so hard to achieve":

My wife had jewelry in her armoire that she collected for over 50 years. She had jewelry that she received from her sister right before her passing. The ring that my wife bought for me is now gone. The one ring that we talked, the blue diamond that my wife bought me this ring, and she paid quite a bit of money for it. It took over two years to pay for it. She gave that to me for an anniversary gift. It was a very special piece that I only wore on special occasions: Out to dinner, weddings, things like that. All that is gone.

* * *

By breaking into our home and robbing us, even took my wife's prayer book, and she had all of her prayer cards that were inside the prayer book. She had an antique rosary, crystal rosary that we couldn't understand why Joey would go and take those things for. He has no need for them.

We don't know what he did with them. We don't know if he destroyed them, if he threw them away or — or what he did with them.

And the safe that I kept in my closet, I don't know how he ever got that to carry it out of the house. He must have had somebody helping him because the safe weighed approximately 145 pounds. Practically, he did have somebody helping him. Inside the safe were a lot of our personal belongings, legal documents, passports, things like that that we had.

* * *

But then the way he ransacked the house, pulled out the dresser drawers, clothing on the floor. Things from the closet shelves all on the floor. And the damage to our side door was — and we have a steel door, side door, and it's — it took some guy like a couple hours just to fix it just so that we could close it and lock it with a bolt lock. All that, all that's been broken. My wife cries almost every night when she goes into the bedroom and looks at her armoire because that's where she kept all of her jewelry, everything was gone from top to bottom, even opened up on the sides. Everything was gone.

* * *

But I know — we are going to be asked for restitution. It's true, he — he doesn't work. I doubt if he ever will work. So there's probably no

way that I'll ever received any kind of money to help take care of the items that we lost.

(Tr. 46-49, 51.)

{¶ 4} The trial court then heard from defense counsel, family, and friends of Klimczyk, and Klimczyk himself. Defense counsel explained that Klimczyk's battle with drug addiction, while not an excuse, was an underlying problem and Klimczyk expressed a sincere desire to get help. Defense counsel shared two letters with the trial court that were obtained while Klimczyk was incarcerated. One letter from MetroHealth Medical Center, and signed by a recovery specialist indicated, Klimczyk was involved in addiction treatment and counseling while in the Cuyahoga County Jail and had a positive attitude; Klimczyk had a strong awareness of his mistakes, which he realized were driven by his drug addiction; and Klimczyk was trying to take steps to better his life and was eager to engage in treatment. The other letter was authored by a union representative who worked in the jail for many years and ran the barbershop. That letter stated that Klimczyk was "the bester barber [he's] seen," hardworking, and very well-mannered. (Tr. 73.) The union representative believed that Klimczyk would be a productive member of society following treatment.

{¶ 5} Defense counsel further explained that Klimczyk's family continued to support him, some of whom travelled to the courthouse to speak on his behalf. Klimczyk's mother spoke about his addiction and her belief that he was a good, caring, and loving person. She requested he be sentenced to a drug-treatment

program rather than prison. Klimczyk's older brother explained the history of drug addiction within their family and expressed his belief that prison would not help Klimczyk. Klimczyk's friend spoke about Klimczyk's struggle with mental health and addiction and his ability to be responsible and loving when sober. Klimczyk's friend, who overcame addiction and the same mental illness, requested that the trial court impose a sentence requiring similar treatment. Finally, Klimczyk apologized to Victims and explained he was under the influence at the time and did not know "how to cope with anything in [his] life." (Tr. 91.)

**{¶ 6}** The trial court sentenced Klimczyk to seven years in a state penal institution, explained the implications of Reagan Tokes Law, and advised that Klimczyk could receive an additional three and one-half years: "There is a bill called Reagan Tokes, which says if you go to a state penal institution and violate their rules and regulations, and if you are adjudicated to have done so after a full-blown administrative hearing, seven years could become 10.5 years." (Tr. 97.)

**{¶ 7}** Next, the trial court addressed the issue of restitution. The following discussion occurred at the sentencing hearing:

> THE COURT: All right. Yeah, and — and just so the record is clear, I have reviewed the PSI and — hang on for a second. I — I do have a response from [Mrs.] Andrews, and she is requesting restitution of $27,264.
>
> [THE STATE]: Right. That's the — that's his grandmother. I mean, obviously, it's your determination, Your Honor, whether to order it. I just don't have documentation. * * * Obviously, they spoke to the items, I just don't have hard —

THE COURT: As far as I'm concerned, we will order restitution in that case. This was the — what case number was it?

[THE STATE]: 674129.

[THE COURT]: $27,261. $27,261. And I am just paging through. * * * Most of the paperwork I'm looking at refers to the Andrews. That is — that is the only formal restitution request we have. So we'll place those restitutions.

(Tr. 103-104.) No objections were made by the defense.

**{¶ 8}** Klimczyk was ordered to serve the following sentence:

Count 1: F2, 7 year(s); a mandatory minimum 18 months, up to a maximum of 3 years post release control. Count 2 in Case #CR-674112 is to run consecutive to case #CR-674129, Count 3 is to run concurrent to Case #CR-674129 for a total of 7.5 years under Reagan Tokes could become 10.5 years. Case numbers CR-674126, 674128, 675991, 674656, 674130, 672604, 674127, and 673841 all counts in each case are to run concurrent to each other and each case is to run concurrent for a total sentence of 7.5 years under Reagan Tokes could become 10.5.

(Judgment Entry, 01/17/23.)

**{¶ 9}** Klimczyk now appeals, raising the following assignments of error:

**Assignment of Error I:** The trial court committed plain error in ordering restitution in CR-674129 where there was no evidence supporting the amount requested.

**Assignment of Error II:** The Reagan Tokes Act is unconstitutional.

## II. Law and Analysis

### A. Restitution

**{¶ 10}** In the first assignment of error, Klimczyk argues that the trial court committed plain error in ordering restitution because no documentation was offered by the state of Ohio to indicate that the amount was nonspeculative.

{¶ 11} Generally, appellate courts review trial courts' restitution orders for abuse of discretion. *State v. Norman*, 8th Dist. Cuyahoga No. 104936, 2017-Ohio-752, ¶ 18. However, as conceded by Klimczyk, we review for plain error because Klimczyk failed to object to the restitution at the sentencing hearing. *State v. Marbury,* 104 Ohio App.3d 179, 181, 661 N.E.2d 271 (8th Dist.1995). Pursuant to Crim.R. 52(B), "plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. In order to establish plain error, Klimczyk must demonstrate that, but for the error, the outcome of the proceedings would have been different. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17, citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001).

{¶ 12} At the time of Klimczyk's offense in August 2022, R.C. 2929.18(A) provided in relevant part that a court may sentence a felony offender to a financial sanction, including:

(1) Restitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in *open court* * * *. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a [PSI], estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that

the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. * * * *If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.*

(Emphasis added.)

{¶ 13} Klimczyk cites *State v. Osborne*, 8th Dist. Cuyahoga No. 110237, 2021-Ohio-3352, in support of his argument that a restitution order must be supported by evidence and not based on speculation. In *Osborne*, the trial court based its restitution order solely on the victim-statement summary prepared by the probation department as part of the PSI. *Id.* at ¶ 18. One victim did not request restitution and advised the probation department that her daughter suffered a loss of "approximately $5,000." Another victim sought reimbursement for his insurance deductible and an additional amount for loss that his insurance would not cover. *Id.* At the sentencing hearing, the state told the judge that the second victim was only seeking his $1,000 deductible. *Id.* No testimony was offered by either victim. The trial court ordered the defendant to pay $4,000 in restitution to the first victim and $2,065 to the second. *Id.* Osborne argued that the trial court committed plain error in ordering restitution without sufficient evidence substantiating the restitution award and by ignoring a limitation of restitution based on the existence of insurance proceeds. This court held that the amounts awarded were based on speculation and not on any documentary evidence or testimony before the court and concluded that the trial court committed plain error. *Id.* at ¶ 18-19.

{¶ 14} The state argues that *Osborne* is distinguishable from the underlying case because the victims, in the instant case, appeared at sentencing and described the loss they suffered to the trial court. The state cites to *State v. Tabasso*, 8th Dist. Cuyahoga No. 98248, 2013-Ohio-3721, in support of its argument that documentation is not necessary to establish an amount lost for purposes of restitution. There, the victim testified as to the three surgeries required to treat his injuries and the amounts of accumulated medical bills and lost wages. This court found that the victim's testimony was credible evidence that established the value of his loss and supported the amount of restitution awarded to the victim. *Id*. at ¶ 15.

{¶ 15} After a thorough review of the record, we agree with the state and find *Osborne* to be distinguishable. In *Osborne*, one victim did not request restitution, no testimony was offered at the sentencing hearing, and the trial court based its restitution order solely on the victim-statement summary prepared by the probation department as part of the PSI. Whereas in the instant case, the losses and damages claimed by Victims were supported by the PSI, victim-impact statement, and request made by the state, and were further bolstered by the statements of Mr. Andrews at the sentencing hearing.

{¶ 16} We note that R.C. 2929.18(A) does not impose an absolute requirement that the victim demonstrate loss through documentary evidence, rather "[i]t is well settled that the evidence that supports a court's restitution order 'can take the form of either documentary evidence or testimony.'" *Cleveland v. Fuller*, 8th Dist. Cuyahoga No. 111790, 2023-Ohio-1669, ¶ 21, quoting *State v.*

*Moore*, 5th Dist. Guernsey No. 22 CA 000007, 2022-Ohio-4261, ¶ 12, citing *State v. Jones*, 10th Dist. Franklin No. 14AP-80, 2014-Ohio-3740. "Instead the amount of economic loss suffered by the victim, and its causal connection to the defendant's conduct in committing the offense, may generally be established by the victim's testimony or other information contained in the trial or sentencing record, including the [PSI]." *State v. Griffin*, 6th Dist. Lucas No. L-11-1283, 2013-Ohio-411, ¶ 44, citing *In re Hatfield*, 4th Dist. Lawrence No. 03CA14, 2003-Ohio-5404, ¶ 9, *State v. Granderson*, 177 Ohio App.3d 424, 2008-Ohio-3757, 894 N.E.2d 1290, ¶ 97 (5th Dist.), and *State v. Brumback*, 109 Ohio App.3d 65, 83, 671 N.E.2d 1064 (9th Dist.1996). This court has held that "an owner of property has special knowledge of the value of that property and is qualified to express an opinion concerning it" and that "[t]his presumption is consistent with the R.C. 2919.18(A)(1) directive that the victim of a crime who suffers economic loss can recommend the amount of that loss." *State v. Walls*, 8th Dist. Cuyahoga No. 100801, 2014-Ohio-3502, ¶ 5.

{¶ 17} Here, Mr. Andrews advised the trial court about the damages and losses resulting from Klimczyk's burglary of Victims' home. These included the loss of "special piece[s]" of jewelry that were collected over 50 years, received from family members, and given as gifts; prayer books and cards; an antique crystal rosary; and a safe with personal belongings, legal documents, and passports. Mr. Andrews also stated that the house was ransacked, with dresser drawers pulled out and clothing and items from closet shelves on the floor. Mr. Andrews described the damage to the side steel door, which took a couple of hours to be repaired. These damages and

losses were linked to Klimczyk's burglary of Victims' home. In addition, the PSI, and victim-impact statement included therein, described some of the damage sustained to Victims' home, a number of personal effects that were stolen as a result of the burglary, and listed a total amount for crime-related costs. The trial court indicated at the sentencing hearing that this paperwork was considered a "formal restitution request" and the state requested "approximately 30,000" on the grandparents' behalf.

{¶ 18} Then, the trial court, in open court, ordered Klimczyk to pay restitution to Victims based upon the PSI, victim-impact statement, request made by the state, and evidence offered by Mr. Andrews. R.C. 2929.18(A)(1) clearly states, "[i]f the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim or survivor disputes the amount." Despite ample opportunity to do so, at no time did Klimczyk or his counsel dispute restitution, the statements offered in open court, or the amounts requested by the state and Victims. Because this triggering event never occurred, the trial court was not required to hold a hearing on the issue and could base the amount of restitution imposed on the amount recommended by the victims, the PSI, and other information, like the statement of Mr. Andrews. R.C. 2929.18(A)(1); *see State v. Jarrett*, 8th Dist. Cuyahoga No. 90404, 2008-Ohio-4868 (finding a hearing was not required and no plain error occurred when the trial court ordered Jarrett to pay restitution at his sentencing hearing in an amount based on victim-impact statements and Jarrett failed to dispute the amounts requested). R.C. 2929.18(A)(1) provided Klimczyk

with an avenue to challenge the evidence presented at his sentencing hearing and the alleged speculative nature of the amount requested by disputing the restitution amount at the hearing, but he chose not to do so. Based on the record before us and in our exercise of utmost caution, we cannot say the trial court's award of restitution, in light of the evidence presented, amounts to an exceptional circumstance or a manifest miscarriage of justice. Nor has Klimczyk demonstrated that the outcome of the proceeding would have been different. Therefore, we conclude that the trial court's imposition of restitution did not violate Klimczyk's substantial rights and find no plain error. Accordingly, we overrule the first assignment of error.

{¶ 19} We note that although restitution was imposed orally at the sentencing hearing, the restitution term was not included in the trial court's sentencing journal entry. The parties do not raise this issue and agree that restitution was ordered. Because the trial court imposed restitution at the sentencing hearing, the lack of inclusion of restitution in the sentencing journal entry is an oversight correctible through a nunc pro tunc entry pursuant to Crim.R. 36. Therefore, we remand the matter for the issuance of a nunc pro tunc entry consistent with the trial court's imposition of restitution at the sentencing hearing in the stated amount of $27,261.

## B. Reagan Tokes

{¶ 20} In the second assignment of error, Klimczyk challenges the constitutionality of the Reagan Tokes Law arguing it violates his right to due process, the separation-of-powers doctrine, and his Sixth Amendment right to a jury trial.

Klimczyk acknowledges that this court previously upheld the constitutionality of the Reagan Tokes Law on these grounds but assigns error to preserve his right should a higher court reach a different conclusion.

{¶ 21} Since the filing of Klimczyk's brief, the Ohio Supreme Court affirmed the judgment of this court in *State v. Simmons*, 2021-Ohio-939, 169 N.E.3d 728 (8th Dist.), and upheld the constitutionality of the Reagan Tokes Law on these grounds. *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, ¶ 1. In *Hacker*, the Ohio Supreme Court held that the Reagan Tokes Law does not violate a defendant's right to due process because it is not void for vagueness or facially unconstitutional. *Id.* at ¶ 40. The *Hacker* Court further held that Reagan Tokes Law does not violate the separation-of-powers doctrine because "allowing the DRC to rebut the presumption of release for disciplinary reasons does not exceed the power given to the executive branch and does not interfere with the trial court's discretion when sentencing an offender." *Id.* at ¶ 25. Finally, the Ohio Supreme Court held that the Reagan Tokes Law does not implicate a defendant's right to a jury trial because the range of penalties prescribed by the legislature and imposed by the trial court will not be changed by any determination made by the DRC regarding the defendant's behavior while in prison. *Id.* at ¶ 28.

{¶ 22} Because the constitutionality of the Reagan Tokes Law has been upheld on the grounds challenged by Klimczyk, we overrule his second assignment of error.

## III.   Conclusion

{¶ 23} Based on the foregoing, the trial court did not plainly err in awarding restitution to Victims.   Klimczyk's substantial rights were not violated and a manifest injustice did not occur because evidence was presented at the sentencing hearing through the PSI, victim-impact statement, request of the state, and statements of Mr. Andrews in open court to support the restitution amount imposed by the trial court.  Moreover, the Reagan Tokes Law does not violate Klimczyk's right to due process, the separation-of-powers doctrine, and his Sixth Amendment right to a jury trial.

{¶ 24} Accordingly, judgment is affirmed.  The matter is remanded to the trial court for the issuance of a nunc pro tunc sentencing entry that includes the restitution award of $27,261.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending is terminated.  Case remanded to the trial court for correction of the journal entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., and
EMANUELLA D. GROVES, J., CONCUR